MUSSER, *Appellant*, v. BRINK.

**Partnership**: LANDLORD AND TENANT FEEDING CATTLE ON SHARES.   An agreement between landlord and tenant, as a part of the consideration for the lease of a farm, that the landlord shall furnish stock enough to eat the hay, oats and corn raised on the demised premises, the tenant to feed the stock, and, upon sale being made, the landlord to be repaid his purchase money first out of the proceeds, and the remainder to be equally divided between the parties, does not constitute them partners in respect of stock bought and fed under the agreement.

*Appeal from Livingston Circuit Court.*—HON. E. J. BROADDUS, Judge.

*C. H. Mansur* for appellant.

*H. M. Pollard* for respondent.

SHERWOOD, C. J.—The petition in this case is as follows: Plaintiff states that on or about the 13th day of March, 1874, he entered into a written contract with the defendant, renting to him, the said defendant, a farm, the property of the plaintiff, situated in the township of Mirabile, in the county of Caldwell, and State of Missouri, from the 1st day of March, 1874, for the term of three years, immediately following the said date last aforesaid; that the defendant thereupon took the immediate possession of said land under said contract; that there was a provision in said contract in words as follows, to-wit:   And it is further agreed by and between said parties (referring to plaintiff and defendant) that the party of the first part is to furnish

money sufficient to purchase stock enough to eat up the said grain or produce raised on said farm, to-wit: The hay, oats and corn, and to not charge interest on any such money, and it is agreed that when any sale of any of said stock is made the party of the first part (referring to the plaintiff) is to first have the amount of the purchase money thereof, and then the balance is to be divided equally between said parties; that pursuant to the provision of said contract last recited, the plaintiff did, on or about the ———— day of November, 1874, purchase eighty head of two-year old cattle, and did, on or about the day and year last named, deliver the same over to the defendant to feed and care for under the provision of said contract above recited; that defendant, from the date last aforesaid, did feed and take care of said cattle on the said farm of the plaintiff, up to the present time; that by the terms and spirit of said contract the said cattle were to be fed and cared for in the county of Caldwell, aforesaid, and on the said farm above referred to; that defendant now threatens and is about to remove said cattle out of Caldwell county, and to take them to the county of DeKalb, State of Missouri, a distance of about forty miles, contrary to the wish of the plaintiff and to the spirit and terms of said contract, and that by the defendant so taking said cattle out of the county of Caldwell, as aforesaid, the plaintiff will be in great danger of losing said cattle; that if they are so removed he will be prohibited from exercising any control over the same; that he has invested in said cattle the sum of $2,200; that defendant is wholly insolvent; that the plaintiff has good reason to believe, and does believe, that if the defendant is permitted to remove said cattle, as aforesaid, out of Caldwell county, he, the said defendant, will sell and dispose of the same and appropriate the proceeds thereof to his own use; that plaintiff is wholly without remedy except by this action; plaintiff therefore asks that a writ of injunction issue, restraining and prohibiting the said defendant from removing said cattle from the county of Caldwell, and for

such other and further orders as the plaintiff may be entitled.

SOLOMON MUSSER.

Which petition is duly sworn to. Upon which petition a restraining order was issued. To which the following answer was filed:

Defendant, for answer to plaintiff's petition, denies that plaintiff, in pursuance of the specification in said contract quoted in said petition, on or about the —— day of November, 1874, or at any other time, furnished defendant eighty head of cattle, or any other number whatever, in any way whatever, or that he delivered him said number or any number; denies that by either the terms or spirit of said contract defendant was to keep the cattle bought by him in pursuance thereof, in said county, or to be fed or cared for there on said farm, further than to feed them the hay, corn and oats grown on said land; denies that he now threatens, or that he is now about to remove said cattle out of this county, or to take them to DeKalb county, Missouri, contrary to the wish of plaintiff, or otherwise, or that it is against the spirit or letter of said contract to move at this season or the spring season, said cattle out of this county, or that plaintiff would be in great danger, or in any danger, of losing said cattle if they were taken to DeKalb county, Missouri, contrary to the wish of plaintiff or otherwise, or that it is against the spirit or letter of said contract to move, at this season or the spring season, said cattle out of this county, or that plaintiff would be in great danger, or in any danger, of losing said cattle if they were taken to DeKalb county; denies that he has any right to exercise any control over said cattle, or that he has invested in them one dollar, except as hereinafter stated, or that defendant is insolvent, or that he believes or has any reason to believe, that defendant would sell said cattle and appropriate the proceeds to his own use. Defendant, for further defense to plaintiff's petition, admits the leasing of said farm, but alleges that the plaintiff was

to and did furnish him $2,200, for which he gave his receipt, with which money defendant bought said cattle; that at the time of entering into said lease, and the time of purchasing said cattle, it was distinctly agreed and understood by the parties that defendant was to graze said cattle during the spring and summer and autumn, wherever he could get the best and cheapest grazing for them; that there was not sufficient commons in Caldwell county on which he could graze said cattle, and that he owned in DeKalb county 640 acres of excellent pasturage, which was only about twenty miles from said farm, and to which, with the knowledge and consent of plaintiff he was about to move said cattle, when he was enjoined by the writ herein; whereupon he was forced to and did expend $320 for pasturing said cattle for the season of 1875, when he could have grazed them on his said pasture in DeKalb county entirely free of cost; that he has been forced to expend large sums of money, viz: $250 in defending said suit, wherefore he prays that said injunction be dissolved, for said sum of $570 damages, and other proper relief.

Plaintiff filed his reply, one of general denial.

The lease and agreement is as follows:

This deed of lease made and entered into this 13th day of March, 1874, by and between Solomon Musser, of the county of Caldwell, and State of Missouri, party of the first part, and Marion Brink, of said county and State, party of the second part, witnesseth : That the said party of the first part, in considerations of the covenants, agreements and stipulations hereinbefore mentioned, doth, by these presents, demise and lease to the said party of the second part, all those premises situate in said county of Caldwell, and State of Missouri, described as follows, to-wit: The old home farm of said Musser, in sections numbers 20, 21, and number 16, in township 56, of range 29; to have and to hold the above described premises, together with the commons and lands thereto attached and adjoining, belonging to said Musser, and with all the privileges

and appurtenance to the same belonging unto the said party of the second part, his executors and administrators, dating from the 1st day of March, 1874, for the term of three years next ensuing, and the said party of the second part, in consideration of the leasing of the premises aforesaid by the said party of the first part to the said party of the second part, does covenant and agree with said party of the first part, his executors and administrators, to keep the said farm in good repair, and at the end of his said term, return and deliver the possession thereof to the said party of the first part in as good condition as said party of the second part found it, the ordinary wear and tear excepted, and also keep out of the meadow and pasture all burdock and sourdock, and trim, top and tend the hedge on said farm, and set out and cultivate what will be necessary to keep hedge good; plant, if Musser furnish the plants to him, and tend the orchard, keeping the borers out of the trees. Also, keep the building in as good condition as said party of the second part shall find them, ordinary wear and tear excepted. Also, to work out the road taxes to said Musser charged in respect to and on said premises. Also, to cultivate the grapes and currants, and sprout all that part of the pasture which is or may be cleared out. Also, to mow out the fence corners once a year; said party of the second part to make all rails necessary to keep the fence in repair; said Musser to pay him $1 per hundred for making the same; said party of the second part to use dead and down timber for firewood; said party of the second part to cultivate and till said farm in a good, husbandlike manner, and to furnish the necessary teams, farming implements and seed of all kinds, except grass seed, for the proper cultivation of said farm, and also, to feed out of the crops raised on said farm all stock hereinafter mentioned. And it is further agreed by and between said parties, that said party of the first part is to furnish money sufficient to purchase stock enough to eat up the

said grain or produce raised on said farm, to-wit: The hay, oats and corn, and not to charge interest on any such money. And it is agreed that when any sale of any of said stock is made, the said party of the first part is to first have the amount of the purchase money thereof, and then the balance is to be divided equally between said parties. And it is further agreed that if said party of the second part shall furnish any stock to be kept and fed on said farm as aforesaid, he shall in like manner have his purchase money at any sale thereof, and then the balance to be divided equally between them. It is further agreed that all the fruits are to be equally divided, the wheat, apples and potatoes are to be divided in the bushel in equal parts, the said party of the second part to gather and measure the same to said Musser or his agent. Should it be necessary to make any improvements on said premises, said party of the second part is to board the hands; said party of the second part is to furnish his own bread corn; said party of the second part to have the privilege of feeding, out of the produce of said farm, horses sufficient to cultivate the same, and cows enough to supply his family with milk; use of garden allowed to second party free. Musser agrees to release Mrs. Brink from the within contract, if complied with, at the end of any one year in case her husband should die. Said Brink also agrees to release said farm at the end of any one year, provided said Musser sells said farm. Musser also reserves the use of carriage house and the privilege of keeping his colts, two in number, on said farm this summer.

Solomon Musser.<br>F. M. Brink.

Attest: R. J. House.

This case came on for hearing, when to maintain his issue, plaintiff read in evidence the aforesaid lease. H. C. Timmons, upon part of plaintiff, testified as follows: I know the parties to this suit. Defendant told me in December, 1874, that he could sell the cattle in controversy

and let the plaintiff whistle for his money; said he could do it, did not say he would do it. He said at the same time he would rather give me every hog he had for nothing than to have plaintiff get one of them. William Medor, on the part of plaintiff, testified: Defendant told me in April, 1875, he had made arrangements to herd the cattle, the subject of this suit, in DeKalb county, Missouri, in the year 1875, just after this suit was brought. Defendant told me that he had the right to sell the cattle, and said he had received them from Musser on the contract between him and Musser to furnish them. A. Smith testified that he knew Brink; told me in June, 1874, that he expected to have a bigger fuss with Musser than the one he had with my father, Governor Smith, the year before over the farm my father leased to him. He told me in June, 1874, that if he was only worth $1,000 he would quit renting and being a tenant, and buy a little farm for himself. Governor George Smith testified: I know defendant Brink. Brink had personal property probably worth $800 to $1,000 outside his household plunder. He owned no real estate. This was in December, 1873. He got $300 out of me in the spring of 1874. E. J. Moss: I know defendant. Plaintiff, defendant and myself all had a talk on Musser's farm in winter, about early February, 1874. Brink wanted me to herd the eighty head of cattle through the coming summer. He said they could be easily herded and he would give me $100. I told him if he would deliver them to me in DeKalb county, and give me $100 I would do it. Mr. Musser said Brink was all right and would do what he promised me. He did not have the cattle at this time, but was about to get them, or was talking with Musser about them or about getting them. I had another talk with him later in the spring alone. He then told me he intended to herd the cattle in DeKalb county, and said he did not think old man Musser would beat him much; that he intended to sell the cattle himself. He did not say at what time he intended to sell them. I did not ask him.

This was all the testimony given in the case.  At this point the court held the parties were partners, and plaintiff could not maintain this suit; and refused to hear further testimony; and refused to permit plaintiff to testify in his own behalf; and peremptorily dismissed plaintiff's petition, and rendered final judgment against plaintiff for costs.

The controlling question in this case is:  Does the agreement entered into between plaintiff and defendant, constitute them partners?  If it does not, then defendant only has such powers as the instrument confers, and cannot rightfully assume the exercise of those incident to a partnership.  In the recent case of *Donnell v. Harshe*, 67 Mo. 170, the subject of partnerships and what constituted them, was examined at some length, as well as numerous authorities referred to, and we there held that an agreement whereby the tenant was to cultivate the farm of his landlord on shares, the landlord and tenant each defraying one moiety of the expenses attendant on such cultivation, and sharing equally in the profits thereof, did not constitute a partnership.  The only observable difference between that case and the present one is, that here, with money furnished by plaintiff, cattle were to be purchased to eat the produce raised on the farm.  We do not think this case can be distinguished in principle from the one just mentioned, where we cited with approval the case of *Dwinel v. Stone*, 30 Me. 384, wherein it was ruled that a mere participation in profit and loss did not necessarily constitute a partnership, Shepley, C. J., remarking:  " There must be such a community of interest as impowers each party to make contracts, incur liabilities, manage the whole business and dispose of the whole property, a right which, upon the dissolution of the partnership by death of one, passes to the survivor, and not to the representatives of the deceased."  If we test the case at bar, by the rule thus announced, it is very easy to see that the agreement in question does not evidence a partnership, and this, for the reason that it doe

not confer on each party power to manage the whole business and dispose of the whole property. This being the case, the property in the cattle remained in plaintiff, and no right to dispose of them was conferred by the contract on defendant, nor to remove them from the farm of plaintiff without his consent. The evidence clearly shows that defendant was intending to take into his own control the sale and disposition of the cattle, and that he was actuated by a spirit which too frequently manifests itself in those who rent farms, and after getting into possession violate every stipulation contained in the lease, and every principle of honesty. For these reasons, we have no question that the injunction should have been granted. We, therefore, reverse the judgment and remand the cause. All concur.

REVERSED.