BANK OF ODESSA, Respondent, v. JAMES H. JENNINGS,
Appellant.

. Kansas City Court of Appeals, July 6, 1885.

1. PLEADING—AVERMENTS CONCERNING TITLE.—A petition alleging
   title to certain property in A, and that A sold, assigned, transferred
   and set over the property to plaintiff, is a sufficient averment of
   title and ownership in plaintiff.

2. DESCRIPTION—UNCERTAINTY OF IN MORTGAGE.—Where the descrip-
   tion in a mortgage of cattle was "twenty head of native two-
   year-old steers," and were the only cattle of that description to
   which the mortgageor made any claim of ownership, it is sufficient.
   Parol evidence is admissible to identify the chattels mortgaged.
   Jones on Chattel Mortgages, section 64.

3. PRINCIPAL AND AGENT—RELATION OF, HOW SHOWN.—A principal can
   maintain an action in his own name on a written contract made by
   his agent, in his (the agent's) name without disclosing the name of
   the principal. The relation of the principal and agent may be
   shown by parol evidence. And as soon as an agent has closed a

contract and paid for personal property with his principal's money, the title to the property vested in the principal. *Lowry v. Bruce*, 5 B. Monroe 44; *Waldo v. Peck*, 7 Vt. 437.

Appeal from Lafayette Circuit Court, Hon. John P. Strother, J.

*Reversed and remanded.*

Statement of case by the court.

This suit is brought to recover damages sustained by plaintiff on account of the conversion by defendant of certain described cattle, alleged to be the property of plaintiff. The petition alleges that one Stephen W. Couch on the 21st day of July, 1881, ".by his certain mortgage deed of that date sold, assigned, transferred and set over to plaintiff twenty head of native two-year-old steers, etc., etc." and that on the 30th day of July, 1881, said Couch "by his certain other mortgage deed sold, assigned, transferred and set over twenty head of Kansas native steers, and four-year-olds, bought of J. C. Cobb on the 30th day of July, 1881, and that defendant converted to his own use sixteen of the native steers and four of the Kansas native steers."

In his answer the defendant denied generally the allegations of the petition except such as were admitted, and alleged that the plaintiff converted to its own use four native beef cattle, the property of defendant, for the value of which with interes the asked judgment. Another defence in the answer, on which no point is made here, it is unnecessary to notice.

The plaintiff introduced in evidence the two chattel mortgages pleaded in the petition. The description is one mortgage was "twenty head of two-year-old steers," and in the other mortgage was "twenty head of Kansas native steers, three and four-years-old (bought of J. C. Cobb, on the 30th of July, 1881)." In both mortgages it was provided that the property should remain in the possesion of Couch, the mortgageor, and that the mortgagee might take possession of said property upon the removal or an attempt at removal thereof from Lafayette

county. The defendant objected to the introduction of the first named mortgage in evidence for the reasons that it was irrelevant and incompetent, and that as to the twenty head of native two-year-old steers it was void for uncertainty, and conveyed as to said cattle no title to plaintiff. The objection was overruled by the court.

Attached to each mortgage there was an affidavit, subscribed and sworn to by the said mortgageor, Couch, to the effect that he was the legal and absolute owner of the property described in the mortgage. ▾ The plaintiff offered the affidavits in evidence. The defendant objected to the introduction of them in evidence for the reason that they were, as evidence, incompetent, irrelevant, and hearsay. The objection was overruled, and the affidavits were read in evidence by the plaintiff.

John A. Price testified, for plaintiff, that on May 27, 1881, he sold Couch the twenty head of native two-year-old steers, that he made the sale to Couch, that he knew no one else than Couch in the trade. He did not know whether Couch was buying for himself or Jennings. This was the tendency and effect of his testimony. He also testified that he helped Couch drive and place the cattle in the pasture of one Whitsett, in Lafayette county. The evidence introduced for plaintiff tended to show that Couch as owner of the cattle in controversy executed the two mortgages, that the plaintiff in good faith dealt with Couch as such owner, supposing him to be such; that Couch had no other cattle than the cattle in suit, answering the description of the cattle mentioned in the mortgages; and that the defendant took from the pasture of the said Whitsett sixteen of the native two-year-old steers, and four of the Kansas native steers and converted them to his own use. It was testified by John C. Cobb, president of the plaintiff, that it got the remaining four of the twenty native two-year-old steers. For defendant no claim was made to the four Kansas steers taken by him. They were the property of plaintiff. Evidence was introduced by defendant tending to show that Couch was insolvent, that the defendant was a farmer and handler of stock.

That defendant employed Couch to rent for him a certain pasture in Lafayette county from one Whitsett, the rent for which defendant paid, and that defendant also employed Couch to purchase from one Price the native cattle in controversy for the sum of six hundred dollars, and to place them when bought in the Whitsett pasture, and for that purpose defendant supplied Couch with six hundred dollars. That Couch bought the cattle on May 27, 1881, and paid for them with defendant's money and placed them in the said Whitsett's pasture. In whose name the pasture was rented does not appear in evidence, but after Couch's death the defendant completed payment of the rent for the pasture. The receipts for the rent were introduced in evidence, but having been omitted from the bill of exceptions, it does not appear from whom they acknowledged payment. That the defendant did not know that Couch bought the cattle in his own name. And that defendant was ignorant of the fact that Couch had mortgaged the cattle until he was notified of it after Couch's death. That the cattle ran in the pasture with Couch's cattle bought from Cobb, and also with a lot of defendant's cattle. That Couch cared for them and saw that none of them got out of the pasture. That they remained in the pasture until the fall of 1881, when all but four of them and four of the Cobb Kansas native steers were taken from the pasture by defendant as his cattle and converted by him to his own use. That eight of the Price native cattle, so taken were taken in September, 1881, by Couch, by the orders of defendant, and were shipped to Chicago with a lot of defendant's other cattle. That they were in charge of Couch in course of shipment, but were shipped to the care of the defendant's broker in Chicago, and were sold by the broker, who remitted to defendant by draft the amount due him; that under the arrangement between defendant and Couch, the latter for his services was to receive one-half of the net profits realized from the said Price cattle.

This is deemed a sufficient statement of the evidence, although it is somewhat lengthy. There was no other

material evidence of the relation existing between the defendant and Couch, than the evidence whose tendency we have just given.

The instructions given and refused were of great number and length, and we have not thought it necessary to set them out herein, as our views of this case will be made plain without so doing.

The jury returned a verdict for the plaintiff and from a judgment rendered thereon the defendant has appealed to this court.

J. D. SHEWALTER, WM. WALKER AND RICHARD FIELD, for the appellant.

I. The petition states no cause of action for two reasons: (1) Being *trover* (and pleading specially plaintiff's title), it alleged no title in Couch or plaintiff. (2) As to the twenty head of native steers, the mortgage is void for uncertainty. *State ex rel, etc., v. Cooper*, 79 Mo. 466. Therefore, the court erred in admitting any evidence on the trial.

II. The court erred in refusing and giving instructions and wholly misconceived the law applicable to principal and agent. An agent has no power to mortgage the property of his principal for his own debt. 2 Benjamin on Sales (3 Ed.) p. 956; *Benny v. Rodes*, 18 Mo. 147; *Wheeler, etc., v. Givan*, 65 Mo. 89.

III. There was no *estoppel* in this case. There was no evidence of acts on which to base it. The only evidence of any act of Jennings was in permiting Couch to make the contract—he was not present—and this did not warrant any instruction as to estoppel, and its only effect would be to *mislead*. No such issue was raised by the pleadings.

IV. Had Couch been in possession of the cattle, yet he would have had no right to sell them, unless from the nature of his employment (as factor) one would be led to suppose he had the right to sell. *Marine Bk. v. Fisk*, 71 N. Y. 353.

V. Mere possession is not sufficient evidence of title to justify a purchaser in buying property. Couch

had really no *indicia* of ownership. *Dows v. Green*, 24 N. Y. 638; *Case v. Jennings*, 17 Texas 661.

RYLAND & RYLAND, A. F. ALEXANDER, for respondent.

I. The petition is strictly correct when tested by the rules of pleading, and presents the legal effect of the mortgage deeds, which was to vest the absolute or general property of the cattle in plaintiff. *Bowie v. Kansas City*, 51 Mo. 454; *Nat. Bk. v. Franklin Co.*, 65 Mo. 105; *Saulsbury v. Alexander*, 50 Mo. 142; *Berthold v. Ins. Co.*, 2 Mo. App. 311.

II. The description of the cattle in the mortgage is not ambiguous, nor is it even indefinite. *Long v. Wagner*, 47 Mo. 179; *Howe v. Williams*, 51 Mo. 252. And even though the description had been uncertain the defect would be cured by the verdict. Rev. Stat., Mo., sect. 3582; *Hog v. Short*, 49 Mo. 149; *Fraser v. Roberts*, 32 Mo. 457.

III. Whenever the legal title to property becomes vested in one person, and the beneficial interest in another, it *is a trust*, and the *cestui que trust* is not recognized in common law, but must enforce his right in equity which has *exclusive* jurisdiction. 2 Story's Eq. Jur. (12 Ed.) 163, sects. 960–964. The legal title to personal property, unaffected by any express trust, invests the holder with power to sell or mortgage as an incident to the title.

IV. The fifth instruction (concerning *ownership* of property and as to *partnership*) given for defendant, contains all that he claimed to be the law, and more than he could legally ask. The seventh instruction asked by him as to *agency* was properly refused, as not based on the evidence and ignoring the rights of third persons.

Opinion by HALL, J.

1. The petition is sufficient. The objection to its sufficiency made by defendant that it does not in express terms aver title in Couch to the cattle, at the time of the execution of the mortgages, is not well made. The petition sufficiently alleges title to the cattle in Couch,

and a transfer thereof to plaintiff. The petition alleges that Couch sold, assigned, transferred and set over the cattle to plaintiff. This is sufficient. Without title in himself Couch could not have sold, assigned, transferred and set over the cattle to plaintiff; and having such title, by so doing, he transferred it to plaintiff.

2. The point made by the defendant that the mortgage of the native cattle was void for uncertainty of description is not tenable. The description "twenty head of native two-year-old steers" under the facts of this case was sufficient. The cattle known as the Price cattle were the only cattle of that description to which Couch, the mortgageor, made any claim of ownership. Parol evidence is admissible to identify the chattels mortgaged. Jones on Chattel Mortgages, sect. 64, and many cases cited. With the aid of the evidence in this case to identify the cattle mortgaged, the description was sufficient. *Idem.*

3. As said under the first point, the cause of action of plaintiff is, by the petition, placed and founded upon the title of Couch to the cattle and a transfer of such title to plaintiff. Under this petition the plaintiff can recover only upon Couch's title transferred to it. The plaintiff, while standing solely upon Couch's transfer of his title, can not recover upon a transfer by him of defendant's title to the cattle, which defendant is estopped to deny. Estoppel *in pais* must be specially pleaded. *Noble v. Blount,* 77 Mo. 242; *Bray v. Marshall,* 75 Mo. 330. The circuit court, therefore, erred in instructing the jury on the theory of estoppel. Under the pleadings the plaintiff's right to recover should have been confined to the title of Couch.

For this reason the judgment herein will be reversed and the cause remanded. But, as the case will be tried again, we feel called upon to determine certain other questions presented and argued.

4. The affidavits attached to the mortgages were hearsay evidence and should not have been admitted.

5. The real question in this case, and the question

which has been argued at most length by the plaintiff is, in whom was the legal title to the native cattle when delivered to Couch, if he, in fact, as testified by defendant, with defendant's money and as defendant's agent, but in his own name, purchased them from Price? The plaintiff insists that the legal title was in Couch and that he held the cattle upon a constructive trust for defendant who had simply a beneficiary's interest therein.

A principal can maintain an action in his own name on a written contract made by his agent, in his (the agent's) name without disclosing the name of the principal. The relation of the principal and agent may be shown by parol evidence. *Briggs v. Munchon*, 56 Mo. 473 ; Wharton on Agency and Agents, sects. 403 and 404 ; Ewell's Evans on Agency 396.

Referring to and relying upon the general rule "that the action should be brought in the name of the party whose *legal* interest has been affected, against the party who committed the injury," the court in *Beebe v. Robert* (12 Wend. 417), said that the undisclosed principal could maintain an action, upon a contract of purchase of goods made by his agent, for a breach of warranty. And the supreme court of Maine in *Cushing v. Rice* (46 Mo. 309), decided in favor of the same rule, giving among other reasons therefor that "the damages, which ground the action, *follow the property.*" Under the facts assumed in the above question, for any damage on account of a breach of warranty the defendant could have maintained an action against Price, although Price supposed that he was dealing with Couch alone. And upon a full compliance by Couch with his part of the contract, had Price refused to deliver the cattle, the defendant could have maintained replevin for them. *Conklin v. Leeds*, 58 Ill. 179.

It would, therefore, seem that the legal title, under the assumed facts, was in the defendant and that the possession of Couch his agent was his possession. But upon this identical question there is direct authority. In *Lowry & Bruce v. Beckner* (5 B. Monroe 44), it is expressly held that as soon as the agent closed the con-

tract and paid for the personal property with his principal's money the title to the property vested in the principal. It is there said "the act of the agent, therefore, in taking the bill of sale to himself, originated in bad faith, and was fraudulent and void, and could not have the effect to divest Beckner" (the principal) "of his title, or deprive him of his right to sue for the horse. No writing was necessary to pass the title. No analogy exists, therefore, between this case, and the case of the purchase or exchange for real estate * * *." And to the same effect is *Waldo v. Peck* (7 Vt. 437.) Upon a consideration of these authorities and these principles we feel convinced that, if the defendant employed Couch to buy for him as his agent the Price cattle, and supplied the necessary money therefor, and that Couch purchased those cattle in his own name, and paid for them with the defendant's money, the legal title to the cattle upon their delivery to Couch was in the defendant.

It may be, and we are inclined to so think, that had Couch purchased with defendant's money, in violation of his employment, a certain number of horses or any other personal property than the Price cattle, the legal title to the horses or other property would have been in Couch with a trust in favor of defendant; and that defendant could have enforced his equitable interest in such horses or other property only in a court of equity. In such case the money of defendant would have been converted by Couch to his own use. The legal title to the property would have been in Couch. The equitable title would have been in the defendant. Couch could not have required the defendant to receive the property. Defendant could have compelled Couch in a proceding in equity to transfer the property to himself, but could not have maintained an action at law for the possession of the property. But, if Couch purchased the Price cattle and paid therefor with defendant's money, even if Couch had taken a bill of sale for said cattle in his own name, the defendant could not have refused to receive them from Couch; and, therefore, it necessarily

follows that the defendant could have maintained replevin for the possession of said cattle had Couch refused to deliver such possession to him.

6.   Should the petition be properly amended, upon a new trial it will be proper for the plaintiff to prove that the defendant is estopped to deny the right of Couch to mortgage and sell said cattle as his own property.   If the defendant, by his own contract or agreement with Couch, authorized Couch to sell as well as to buy said cattle, and Couch mortgaged the cattle to plaintiff, who acted in good faith, thinking that Couch was their real owner, and being ignorant of the actual facts, then the defendant would be estopped to deny the validity of the mortgage.   Or, if Couch was only authorized to buy the said cattle and not to sell them, still, if the defendant knowingly permitted him to act and treat the cattle as their real owner, with the power as such owner to dispose of them, and he mortgaged them to the plaintiff, who acted in good faith, believing Couch to be the real owner and being ignorant of the actual facts, the defendant would be estopped to deny the validity of the mortgage.   But the mere possession of the cattle by Couch did not authorize him to mortgage or sell the cattle as his own, and would not estop the defendant from setting up his title to them in this action.   Wells on Replevin, sect. 212; *Coville v. Hill*, 4 Denio 327; *Hotchkiss v. Hunt*, 49 Me. 213.

7.   The plaintiff suggests that because Couch was to receive one half of the net profits realized from the cattle as his compensation for buying and handling them, that he was defendant's partner in the cattle, and as such partner had the power to mortgage or sell them.   The fact that Couch was to be paid, as compensation for his agency, one-half of the net profits, did not constitute him a partner of defendant.   *Wiggins v. Graham*, 51 Mo. 20; *Campbell et al v. Dent*, 54 Mo. 332; *Donnell v. Harshe*, 67 Mo. 173; *Musser v. Brink*, 68 Mo. 249; *Sharpe v. Johnston*, 76 Mo. 660.   And, besides, one partner has no right to pay his individual debt with the

property of the partnership. *Ferguson v. Thatcher*, 79 Mo. 514.

The judgment of the circuit court is reversed and the cause is remanded. All concur.