NAT. BRUEN, Appellant, v. THE KANSAS CITY AGRICULTURAL AND HORTICULTURAL FAIR ASSOCIATION, Respondent.

Kansas City Court of Appeals, March 31, 1890.

*Rehearing denied, April 14, 1890.*

1. **Ownership:** EARNINGS. Whether plaintiff was the absolute owner of certain race horses, or was simply in control thereof for the season, to be used as he saw fit, he was entitled to all their earnings.

2. **Appellate Practice**: DUTY TO REVIEW JUDGMENT ON UNDISPUTED FACTS. The material facts being undisputed, it is the duty of the appellate court to review the action of the trial court thereon and decide if its judgment is warranted by such facts.

3. **Principal and Agent**: PRINCIPAL'S RATIFICATION OF AGENT'S CONTRACT AND NOTICE AS TO DISPOSITION OF PROCEEDS: PARTNER-SHIP : SALARY. Plaintiff engaged A. to travel with, enter and race certain horses for the season, and as compensation for his services A. was to receive one-half of the net winnings. In absence of winnings plaintiff was to bear all expenses, and all entries were to be made in his name. A. entered the horses at the defendant's races in the name of R. Plaintiff informed defendant the horses were his and all winnings were to be paid to him and not to A. or R. Both horses won and plaintiff demanded the winnings, but defendant paid them to R. *Held*—

> (1) The arrangement between plaintiff and A. did not constitute a partnership, wanting community of all profits and losses; but made A. the agent of plaintiff.

> (2) Where the principal intervenes and demands the beneficial results of a contract made by his agent, and where the third party, in face of the demand and warning by the principal, insisted upon payment over to the agent, after the agent's authority had been extinguished, then such payment was at its peril and it must respond again to the demand of the principal.

> 3 While the plaintiff adopts the contracts of entry, in so far as to demand benefits arising therefrom, he must also assume the burdens attached and meet the delinquent entrance fees.

*Appeal from the Jackson Circuit Court.*—HON. RICHARD H. FIELD, Judge.

REVERSED AND REMANDED (*with instructions*).

*Crittenden, Stiles & Gilkeson,* for the appellant.

(1) The facts in the case submitted being undisputed and their legal effect only in question, and there being no evidence to weigh, the appellate court may review the decision of the lower court though no declarations of law were given or refused. *Waddell v. Williams,* 50 Mo. 216 ; *Henry v. Bell,* 75 Mo. 194 ; *Douglass*

*v. Orr*, 58 Mo. 573. ( 2 ) The judgment in this case being erroneous, there being no evidence to support it, and the motion for a new trial having called attention to that fact, this court can interfere "regardless of the declarations of law given, or if none were given." *Moore v. Hutchinson*, 69 Mo. 429. ( 3 ) Where an agent in fact contracts in his own name without disclosing his principal, or where one not in fact an agent, but assuming to act as an agent, makes a contract, in the one case the undisclosed principal can claim and recover the benefits of the contract, by stepping in and making himself known, and in the other the party for whom one assumes to act as agent can by ratification of the contract claim its benefits. It is only when one not in fact an agent nor assuming to act as an agent but as a principal makes a contract in respect to another's goods, that the owner thereof cannot claim the benefits under said contract, there being in such case no privity on which to found such claim. Mechem on Agency, sec. 127; *Hamlin's Appeal v. Seers*, 82 N. Y. 327; *Brainerd v. Dunning*, 30 N. Y. 211, and cases in appellant's original brief. ( 4 ) The undisputed evidence at the trial was that Abbott was to have, for his compensation, one-half of the winnings of the horse Egmont, but was not to bear any of the losses of taking him about the country in the event of his being unsuccessful. Abbott had nothing to do with the losses or expense on any account. And it has always been held in this state that an interest even in profits is not sufficient to constitute the parties partners. *Stoallings v. Baker*, 15 Mo. 481; *Campbell v. Dent*, 54 Mo. 325 and 333; *Donnell v. Harshe*, 67 Mo. 170; *Gill v. Ferris*, 82 Mo. 156–167; *Clifton v. Howard*, 15 S. W. Rep. 26. ( 5 ) It is hardly possible to mistake the position occupied by Rouse in this transaction. That he was clearly a sub-agent—Abbott's tool—all the facts and circumstances of the case illustrate.

*Gage, Ladd & Small*, for the respondent.

(1) Both the instructions are bad and were properly refused because they are hypothecated upon the fact that Abbott was a mere employe, or agent, of Bruen. The nature of his relations with Bruen are stated by Bruen himself, and his statements are uncontradicted, and they show not an employment of Abbott by Bruen, nor any agency but a bailment of the horses under an agreement to divide profits, which probably made Bruen and Abbott' partners in the enterprise. The court could not, without stultifying itself, call this arrangement an employment or an agency simply, and the only proper hypothecation in this respect would have been a statement of the arrangement as it appeared in the evidence. Abbott was not an employe, but worked for himself; he was not an agent, but represented himself and his own interests equally with those of Bruen. (2) The instructions were properly refused, because under Rouse's entry he, and he alone, was the party who contracted with respondent, he was the only party responsible to the respondent, and the only one to whom the respondent agreed to be responsible, and the matters of the ownership of the horses and the relations between Bruen and Abbott were entirely immaterial to the case. (3) There is no similarity between this case and a case where a servant lets out his master's horse to service. These horses were not racing in the service of respondent, but entirely for their own use and benefit. They were as much in the service of the betters and pool-buyers at the race as of respondent. Rouse, by incurring certain obligations to respondent, secured for Egmont and Zoe K. the privilege of competing in the races and the respondent agreed to pay Rouse a certain premium in case those horses should compete and win. Rouse did not undertake that the horses should compete, and the respondent had no interest

whatever in having them compete. Whether they did so or not the respondents got their entrance money and that was all they wanted. There was, therefore, no service rendered to respondent by those horses, and Bruen cannot recover as for services rendered. (4) The appellant in invoking the law of agency confuses the relations of Rouse to this transaction with those of Abbott. If Abbott was an agent or employe Rouse was not, and beyond Bruen's suspicion, there is no evidence of any connection or understanding between Rouse and Abbott.

GILL, J.—As to the material facts of this controversy there is no conflict, the evidence showing substantially about the following : In the spring of 1887, plaintiff Bruen, a large dealer and owner of stock and speed horses at Burlington, Iowa, engaged one Abbott to take charge of his racers for the season of 1887. Abbott was to travel with the horses, enter and trot them at the various places on the "circuit," and as compensation for his services was to receive one-half of the net winnings. If there were no winnings then all the expenses were to be borne by Bruen. It was, too, definitely understood that all entries for races should be in the name of Bruen. Among the horses thus intrusted by Bruen to Abbott was a gelding named "Egmont" and a mare "Zoe K." Abbott began his tour in June, traveling from place to place, entering and racing the animals, winning some purses, and appeared at the races advertised and held by the defendant Kansas City Fair Association, in October, 1887. At some of these races Bruen had appeared, and it seems had detected Abbott entering and racing the horses in the name of one Rouse, instead of in the name of Bruen, as instructed. Complaint was made at Des Moines and Abbott agreed not to do so again. But, on Bruen's arrival at Kansas City on October 12, he found Abbott repeating the same violation of instructions—that the

horses Egmont and Zoe K. were that day entered and being run in Rouse's name. Thereupon Bruen gave notice to the fair association that he, Bruen, was the owner, or proprietor, of the horses thus entered in the name of Rouse—that said Rouse had no interest in the horses—was not employed by him, and that such entries were wholly unauthorized, and then and there on October 12, and 13, warned the managing officers of the association not to pay any winnings of the said Egmont and Zoe K. to said Rouse or Abbott but to pay the same to him Bruen, the owner. Egmont won a purse of five hundred dollars, and Zoe K. a purse of one hundred and twenty-five dollars. Bruen demanded the same from the defendant. The demand was refused, and the winnings ( less some charges against the horses for entry fees not paid, etc.) were paid over to Rouse, and this, too, after notice given by Bruen. Thereupon Bruen brought this suit, the petition stating plaintiff's case in two counts, one for the winnings of Egmont and the other for the winnings of Zoe K. Upon a trial had before the circuit judge without a jury, the court gave judgment on the first count for the defendant, and on the second count for the plaintiff. From this judgment plaintiff has appealed to this court.

I. In the foregoing statement of facts we have intentionally eliminated matters which we deem wholly immaterial to a correct understanding of the controlling features of this controversy. It matters not whether Bruen was absolute owner of the horses Egmont and Zoe K., or was simply given them in charge and control for the racing season of 1887, to be by him used as he saw fit. Bruen was for that season the owner, and absolutely entitled to all their earnings.

And, as to the occurrences at Kansas City, it is sufficient to say that arrangements as to entrance fees were made satisfactory to the fair association, the fees and charges were paid ; and the question is to whom should the association have paid the winnings, after deducting

the admitted charges? The material facts being undisputed, it is our duty to review the action of the trial court thereon and decide if its judgment is warranted by such facts.

II. The arrangement between the plaintiff Bruen and Abbott did not constitute a partnership. It wanted the necessary community of profits and losses to effect a copartnership. Abbott was the hired agent of Bruen, and his measure of compensation was the one-half of the net earnings of the horses. Bruen was liable for all expenses in the first place. If there were no winnings, then the entire loss was Bruen's loss. If there were winnings, then Abbott was to have for his services the one-half thereof after the payment of expenses. This was not a partnership. *Bank of Odessa v. Jennings*, 18 Mo. App. 660; *Gill v. Ferris*, 82 Mo. 167; *Donnell v. Harshe*, 67 Mo. 170; *Campbell v. Dent*, 54 Mo. 325. When, then, Abbott entered the horses Egmont and Zoe K. at Kansas City in the name of Rouse he acted as agent for Bruen, but violated instructions in failing to make such entries in the name of his principal. Bruen, however, appeared after such entries were made, thus far (while complaining) ratified the agent's acts, and permitted the horses to compete, But, while thus adopting the contract of *entry*, thus made by the agent, Bruen denied the agent's authority to collect the proceeds arising from the contract of entry, and gave notice thereof to the fair association, demanding payment of the winnings, and warning the officers not to pay the same to Abbott, or his substitute Rouse.

Even though Bruen's agent had contracted with the fair association in his own name, yet, upon discovery by the association that Bruen was the principal, it was its duty, upon demand of the principal, to hold such winnings for him. Although Bruen's name did not appear in the contract of entry, he, as principal, had the right to all the benefits arising from a contract made by his agent, and might sue for and recover the

same in his own name. "The principal may by his own intervention intercept, suspend or extinguish the right of the agent under the contract." Story on Agency [9 Ed.] sec. 403. "After the principal has interposed and given notice of his claim, his right to sue cannot be afterwards defeated nor impaired by any dealings between the other party and the agent." Meacham on Agency, sec. 772; *Pitts v. Mower*, 18 Me. 361 (36 Am. Dec. 727); Story on Agency, sec. 421.

To us, then, this seems a case where the principal intervenes and demands the beneficial results of a contract made by his agent, and when the third party, in face of a demand and warning by the principal, insisted upon payment over to the agent, after the agent's authority had been extinguished, then such payment was at its peril, and it must respond again to the demand of the principal. In our opinion, then, the admitted facts of this case warrant a judgment for plaintiff on both counts of the petition. Of course, while the plaintiff adopts the contracts of entry, in so far as to demand *benefits* arising therefrom, he must also assume the *burdens* attached, and proper allowances should be made for the delinquent entrance fees admitted to aggregate two hundred and fifty-six dollars.

The judgment then of the circuit court is reversed and cause remanded with directions to enter a judgment for plaintiff on both counts of the petition; that is, five hundred dollars on the first count and one hundred and twenty-five dollars on the second count, aggregating six hundred and twenty-five dollars. From which said six hundred and twenty-five dollars defendant is entitled to have deducted the sum of two hundred and fifty-six dollars, leaving a balance due plaintiff, October 13, 1887, of three hundred and sixty-nine dollars, which, with six per cent. interest per annum, added from said October 13, 1887, should be the judgment against defendant. The other judges concur.