W. A. LOCKART, Appellant, v. A. A. FORSYTHE AND NANCY C. FORSYTHE, Executors of HARRIS. FORSYTHE, Deceased, Respondents.

### St. Louis Court of Appeals, May 10, 1892.

1. **Administration**: ALLOWANCE OF DEMANDS CREATED AFTER DECEASE OF THE DECEDENT: POWER COUPLED WITH INTEREST. A power coupled with an interest survives the death of the grantor of it; and when such power authorizes the grantee of it to contract debts and charge the grantor therewith—as was held to be the case herein—a debt contracted by the grantee in pursuance of it, though after the death of the grantor, may be presented and allowed as a demand against the estate of the latter.

2. **Contract**: EFFECT OF DEATH OF PARTY: POWERS OF LEGAL REPRESEN-
TATIVES. Whether a contract establishes a personal relation between
the parties, or does more, so that it will survive the death of one of
the parties, and can be executed by his legal representatives, depends
upon the intention of the parties, unless the intention is such as the
law will not enforce. And *held*, that the contract in question herein
did not terminate with the death of one of the parties, since the con-
tinued execution of it, though involving the exercise of a certain
amount of business judgment on the part of the legal representatives
of the decedent, did not impose on such legal representatives any
active duty in the management of the business provided for by it.

*Appeal from the Lawrence Circuit Court.*—HON. M. G.
McGREGOR, Judge.

REVERSED AND REMANDED.

*Norman Gibbs*, for appellant.

*R. H. Landrum* and *Joseph French*, for respondents.

BIGGS, J.—Harris Forsythe died testate in Law-
rence county on the first day of April, 1887. The
defendants, having been named as executors in the
will, duly qualified as such, and took upon themselves
the administration of the estate. The plaintiff pre-
sented to the probate court a demand which he asked
to be allowed against the estate. The claim was for
the value of certain corn claimed by the plaintiff, which
he alleged had been taken by the defendant's agent in
the years 1887 and 1888, and by him fed to stock
belonging to said estate. Both the probate and circuit
courts rejected the demand, and the plaintiff has
brought the case here by appeal.

The facts, upon which the plaintiff rests the right
to have his claim allowed and paid out of the assets of
the estate, may be thus briefly stated: It was claimed
by [him that, about one year prior to the death of
Forsythe, he (Forsythe) entered into a written con-

tract with one Joseph S. Price, in which the parties respectively agreed and contracted that Price should cultivate at his own expense a farm belonging to Forsythe for the term of three years, and that, in consideration of this, the latter agreed to furnish the money to buy forty or fifty head of young mules each year, and such other live stock as the parties might agree on, and that the proceeds arising from the sale of the stock, less the amount of money advanced by Forsythe, was to be divided equally between the parties; that, at the time Forsythe died, this contract had two years to run, and that the executors undertook to and did carry it out by furnishing Price with money to buy feed for the stock which was on hand at the time of Forsythe's death, and also additional sums during the years 1887 and 1888 to purchase other stock and the necessary food for the same. The plaintiff established the foregoing facts by A. Forsythe, one of the executors. The court also permitted the plaintiff to introduce evidence tending to show that Price, during the years 1887 and 1888, fed to the live stock, in which he and the estate were interested, a large amount of corn which had grown on the plaintiff's farm; but the court refused to allow the plaintiff to show that this corn belonged to him, and that he had never received any pay therefor. The written contract between Forsythe and Price was proven and offered in evidence, but the court excluded it. The plaintiff also offered in evidence the settlements of the executors with the probate court for the purpose of showing the disbursement of money to Price to pay for feed and stock, and also receipts for the sale of the stock; and also to show that the execution of the contract with Price had been a source of profit to the estate, and, further, that the actions and doings of the executors in the premises had received the sanction of the probate court. Thereupon,

the court instructed the jury that, under the law and the evidence, the verdict should be for the defendants. The action of the court in rejecting this evidence and in giving this instruction constitutes the plaintiff's ground of complaint on this appeal.

The questions to be answered on this record depend upon the construction of the written contract between Forsythe and Price. If by its terms Price was constituted the agent of Forsythe with authority merely to buy stock and the necessary feed for them, and Price was *only* interested in the profits, then the contract terminated with the death of Forsythe. *Hunt v. Rousmanier*, 8 Wheat. 174. The same result would follow if the contract established a copartnership. In either case, if a subsequent arrangement was made between Price and the executors for a continuation of the business by which debts were contracted, Price and the executors as individuals might be held for such debts, but not the estate. But, on the other hand, if Price's agency was coupled with an interest in the subject-matter of the business, then the contract survived, and Price had the right to carry it out; and, if the executors had refused to furnish the necessary money for its execution, then he would have been entitled to a judgment against the estate for damages for its breach. The contract is as follows:

"STATE OF MISSOURI, }
"County of Lawrence. }

"*Know all men by these presents:* That I, H. Forsythe, of the first part, and Joseph Price, of the second part, enter into this agreement: *First*, that I, H. Forsythe, of the first part, do (*sic*) agree to furnish to Joseph Price, of the second part, my entire farm, consisting of three hundred and ninety acres, it to be turned over in good repair to said Price, and he to take

said farm and furnish teams to run same; also to be at all expense of running said farm, and keeping same in good repair at his expense.    And H. Forsythe, of the first part, is to furnish money to buy young mules, from forty to sixty each year, as both parties may deem proper, to be kept on said farm; also any other stock that we may want on said farm.  And said Price shall have for his services as manager of said farm one-half the profits coming out of stock kept on said farm, when sold, after the said purchase money has all been deducted from sales off of said farm, the labor in culti- vating said farm and buying stock for said farm to all be done by party of the' second part, at his expense. The jack Alfonso, and horse Tuckaho, to be owned by Forsythe and Price, the profits to be divided equally at end of each year.

"The said Joseph Price to give his exclusive atten- tion to said farm and stock, signed this first day of April, 1886.

"In addition to the above, business shall run at least three years, and as much longer as both parties may agree.

"Signed this twenty-third day of April, 1886.

"H. FORSYTHE,
"J. S. PRICE."

"One day after date I promise to pay H. Forsythe $493, value received, interest ten per cent. from date.
"J. S. PRICE."

The foregoing contract and note were written with a lead pencil on the same paper, and on the margin of the paper against the note is written in ink the follow- ing, to-wit:    "Paid March 9, 1889."

Was Price's agency of such a character as to sur- vive or continue after the death of Forsythe?    Chief Justice MARSHALL, in *Hunt v. Rousmanier*, 8 Wheat. 174, 203, explained what was meant by the phrase, a

"power or agency coupled with an interest." He said: "Is it an interest in the subject on which the power is to be exercised, or is it an interest in that which is produced by the exercise of the power? We hold it to be clear that the interest, which can protect a power after the death of a person who creates it, must be an interest in the thing itself. In other words, the power must be engrafted on an estate in the thing." In explanation of this principle it is also said in the opinion: "The interest or title in the thing being vested in the person who gives the power remains in him, unless it be conveyed with the power, and can pass out of him only by a regular act in his own name. The act of the substitute, therefore, which in such a case is the act of the principal, to be legally effectual, must be in his name, must be such an act as the principal himself would be capable of performing, and which would be valid if performed by him. Such a power necessarily ceases with the life of the person making it. But if the interest, or estate, passes with the power, and vests in the person by whom the power is to be exercised, such person acts in his own name. The estate, being in him, passes from him by a conveyance in his own name. He is no longer a substitute, acting in the place and name of another, but is a principal acting in his own name, in pursuance of powers which limit his own estate. The legal reason which limits a power to the life of a person giving it exists no longer, and the rule ceases with the reason on which it is founded."

The proper interpretation of the contract before us, as applicable to the rights of the present litigants, is by no means free of difficulty. It may be safely said, we think, that under the decisions in this state there was, strictly speaking, no partnership between Forsythe and Price. *Donnell v. Harshe*, 67 Mo. 170; *Musser v. Brink*, 68 Mo. 242; *Newberger v. Friede*, 23 Mo. App.

631. Neither can it be said that Price was simply employed as the agent of Forsythe to buy and feed stock, and that he was to be compensated for his labor by a division of the proceeds of sales. For, if such was the contract, Forsythe had the right to revoke the agency at any time, and it was necessarily revoked by his death. But we encounter difficulties in applying the principle laid down in the case of *Hunt v. Rousmanier*, *supra*, and other authorities as applicable to an agency coupled with an interest. That Price was vested with an interest in the jack and stallion, and in all stock purchased, we think admits of no doubt. As a test of this neither Forsythe nor his executors could have deprived Price of the possession of the property and put him to his action for damages. And it seems equally clear that Price had the right to contract for the purchase and sale of stock, and the necessary feed for the same, in his own name. But the trouble with us is, that the scope of the agency beyond certain limits was by the contract made to depend upon the judgment of both parties, and thus the question is presented, whether or not Price's agency does not fall within that class where the employment is irrevocable during the life of the grantor, but by its very nature must cease at his death.

In the case of *Yerrington v. Greene*, 7 R. I. 589, the deceased, who was a manufacturer of jewelry, employed the plaintiff for a period of three years to take charge of the branch office of the deceased in the city of New York at a stated annual salary. The deceased died during the time. His executors closed out the business in New York, and the plaintiff brought his action for damages against the estate for a breach of the contract. The court, after stating the general rule that unexecuted contracts are not rescinded by the death of one of the contracting parties, but according

to their nature must either be specifically performed by
the representatives of the deceased contracting party,
or must be rescinded by agreement, proceeds to state an
exception to the rule.   It was said:   " An exception to
this rule, equally well established at both the civil and
common law, is, that in contracts in which performance
depends upon the continued existence of a certain
person or thing, a condition is implied, that the impos-
sibility of performance arising from the perishing of
the person or thing shall excuse performance.   The
implication arises in spite of the unqualified character
of the promissory words, because, from the nature of
the contract, it is apparent that the parties contracted
upon the basis of the continued existence of the par-
ticular person or chattel."   Many cases are there stated
where this exception would govern.   For instance,
where one party to a contract of marriage dies; the
death of an author or artist before a book or picture is
completed; the death of a slave before the day set for
delivery, or the death of the master or apprentice
before the expiration of the time of service.   The court
there held that the case then under consideration was
within the exception.

The case of *Dickinson v. Callahan*, 19 Pa. St. 227,
discusses the same principle.   There A agreed to sell to
B all lumber sawed at his mill during five years, the
quantity to be equal to an average of three hundred
thousand feet annually.   Both parties to the contract
died before the expiration of the time.   The represen-
tatives of B sought in the action to hold the represen-
tatives of A for damages for failure to perform the
contract.   The supreme court of Pennsylvania, in dis-
cussing this alleged liability, said:   " Does such a
contract establish anything more than a personal rela-
tion between the parties?   This is a mere question of
construction, depending upon the intention of the

Lockart v. Forsythe.

parties, unless the intention be such as the law will not enforce. Is it probable that either party intended to bind his executors or administrators to such a relation? The contract does not say so, and we think it did not mean it; for it would involve the intention that the administrators of one shall be lumber merchants, and those of the other sawyers. The character of the contract demands not such a construction; for each delivery under it is necessarily of complete and independent articles, and each delivery was to be at once a finished work on each side. There may be cases where it is necessary that the executor or administrator shall complete a work already begun by the decedent, and then they may recover in their representative character; but here every act of both parties was complete in itself." The court then proceeds also to argue that a performance of the contract in question was incompatible with the office of an administrator, for it would require him to take possession of and run the saw mill, etc.

Neither one of the cases cited is like the one before us as to its controlling facts, but the discussion in each of the opinions throws some light on the question which is troubling us; that is, whether, from the nature of the contract and its terms, the parties contemplated that Price's agency should be revoked in case of the death of Forsythe. If they did, then the judgment of the circuit court was right, because, if the agency terminated with the death of Forsythe, Price could not bind his estate. It will be observed that the intention of the contracting parties in each individual case must control, if it is such as the law will enforce. In the *Dickinson case*, the court held as a matter of construction that the contract created merely a personal relation, and that it necessarily ceased with the death of A. This conclusion was reached upon the theory, that each delivery of lumber was a complete act within itself,

leaving nothing unfinished pertaining to it; that the execution of the contract by the executors of A would require the running of the saw mill, which would involve the estate in new and varied complications, and exact of the executors the exercise of a peculiar skill, and would impose on them labors and duties not contemplated by law. These reasons furnish the basis for the court's interpretation of the contract.

Do these arguments obtain in the case before us? In a measure they do, but not to the extent which would lead us to a similar conclusion. The business contemplated by Forsythe and Price was the purchase and sale of young mules and other live stock. Forsythe was to furnish the money, and Price was to buy, feed and sell the stock, and also to cultivate the farm at his own expense. Our common experience teaches us that the profitable prosecution of such a business requires time. The profit is in the growth of the stock. Therefore, it is not reasonable to suppose that Price would have entered into such a contract, if it was intended by the parties that the business should terminate if Forsythe should die. Price in all probability expended a good deal of money in making preparations to carry on a farm of four or five hundred acres for three years, and he could not have reasonably expected to receive any profits short of the limitation fixed by the contract. To this extent the reasoning of the *Dickinson case* is inapplicable.

But it will be observed that, beyond a certain number of mules to be purchased, or other live stock, it required the exercise of the mutual judgment of the parties, not in making the purchase but in determining whether the additional stock should be bought. The question, therefore, presents itself, whether the exercise of such judgment was incompatible with the duties of Forsythe's executors. We think there is a good deal of

difference between the exercise of such judgment and discretion, and the running of a saw mill for four or five years. In determining what additional stock, if any, should be bought, it only required the exercise of ordinary business judgment which all executors are supposed to possess. The continuation of the business imposed no active duties on them in reference to its management.

We, therefore, conclude that Price's agency survived, and, as there was no legal obstacle in the way of the enforcement of the contract by Forsythe's executors, and as they elected to and did carry it out, all acts of Price, within the scope of the business, bound the estate. Under this view the court committed error in excluding the plaintiff's evidence. If Price fed the plaintiff's corn to stock belonging to himself and the estate, then the plaintiff is entitled to an allowance for its reasonable value, unless the plaintiff acted in such a way in reference to the corn as to estop him from insisting on payment. There is some evidence looking in that direction.

With the concurrence of the other judges, the judgment of the circuit court will be reversed and the cause remanded. It is so ordered. Judge ROMBAUER concurs in the result only.