[No. 654.   July Term, 1897.]

## G. WORMSER & COMPANY, Plaintiffs in Error, v. SIGMUND LINDAUER, Defendant in Error.

PARTNERSHIP—CONTRACT—CONSTRUCTION.—Where, on an agreement between partners, that the partnership should "stand dissolved from and after" a named date, the retiring partner to retain an interest in the accruing profits of the new firm until a certain date, when an appraisement of the firm assets would be made and a final accounting had, an action of assumpsit was brought by the new firm as such on an account against the retired partner for an alleged indebtedness previously accruing,—Held: That the action could not be maintained.

*Error*, from a judgment for defendant, to the Third Judicial District Court, Grant County.   Affirmed.

The facts are stated in the opinion of the court.

S. M. ASHENFELTER for plaintiffs in error.

When settlement has been made and balance struck, an action at law will lie for recovery of balance.   DeJarnett's Ex'r v. McQueen, 31 Ala. 230, 68 Am. Dec. 164; Edgar v. Baca, 1 N. M. 613.

An action at law can be maintained where there has been a final settlement of the affairs of the concern including the collection of its assets, the discharge of its liabilities, and the statement of balances.   Russell v. Byron, 2 Cal. 86; Ross v.

Cornell, 45 Id. 133; Fisher v. Sweet, 67 Id. 228; Beaton v. Wade, 14 Colo. 4; also notes to 17 Am. and Eng. Ency. Law, 1254; Gulick v. Gulick, 14 N. J. Law, 578; Clark v. Dibble, 16 Wend. 601; note 6, 17 Am. and Eng. Ency. Law, 1267.

No express promise to pay such balance is necessary. Mackey v. Auer, 8 Hun. 180, and citations in note 1, 17 Am. and Eng. Ency. Law, 1268. See, also, 1 Chit. [6 Ed.] 39, note 2; Wray v. Milestone, 5 M. & W. 21; Williams v. Henshaw, 11 Pick. 82; 12 Id. 378; Clark v. Dibble, supra; Sally v. Capps, 1 Ala. (N. S.) 121; Barger v. Collins, 7 Har. & Johns, 213; Chase v. Garvin, 19 Me. 211; Gibson v. Moore, 6 N. H. 547; Collyer on Part., sec. 281, and citations.

An action at law for the balance struck will be maintained when there has been a final adjustment of the principal part of partnership accounts, leaving some debts outstanding, not embraced in the stated struck account. Brinley v. Kupfer, 6 Pick. 179; Sikes v. Work, 6 Gray, 433; Fink v. Ryan, 3 Scam. 322; Rockwell v. Wilder, 4 Met. (Mass.) 556; Williams v. Henshaw, 11 Pick. 79.

Joseph Boone for defendant in error.

To entitle one partner to sue his copartner on an account stated, something more is required than in the case of an account stated between strangers. An account stated is a demand on one side which is admitted on the other for a definite amount due. Powell v. Pacific R. R., 65 Mo. 658.

And the acknowledgment must be unqualified. Calvert v. Baker, 4 M. & W. 417; Evans v. Verity, R. & M. 239.

COLLIER, J.—The plaintiffs in error sued Sigmund Lindauer in the district court of Grant county describing themselves as Gustav Wormser and Isaac Wormser "partners doing business at the town of Deming in said county of Grant under the firm name and style of G. Wormser & Co.," the action being assumpsit. The declaration alleges an indebtedness of $8,713.12 upon open account, and with it was filed a verified account with the caption, "Mr. Sigmund Lindauer in

acct. with G. Wormser & Co. Dr.," showing debits and credits beginning with June 4, 1891, and extending down to October 1, 1894.   The verification is by Gustav Wormser as a member of said firm and that Sigmund Lindauer is indebted to the firm of G. Wormser & Co., in said sum.

The plea in the general issue verified.

At the close of all the testimony the court below instructed the jury to find a verdict for the defendant which was done.

Motion for a new trial having been made and overruled, the cause is before us on writ of error sued out by plaintiffs in the lower court.

The evidence in this record shows that during and prior to the year 1891 Sigmund Lindauer, Gustav Wormser and Isaac Wormser, were copartners doing business under the firm name and style of Lindauer, Wormser & Co., and that on June 27, 1891, they entered into a written agreement that the firm of Lindauer, Wormser & Co., should "stand dissolved from and after July 1, 1891, the said Sigmund Lindauer withdrawing from said firm."   It was further provided that Lindauer "has a one-third interest in the net assets of said firm" and that buildings, corrals, etc., should be appraised at $24,000 or more as shown upon final accounting January 1, 1892.   Then follows this clause of the written agreement for dissolution:

"In further ascertaining said assets, an account of all stock, merchandise, etc., shall be taken during the last week of December, 1891, books balanced, and profit and loss charged with bad accounts; the net assets thus ascertained to be the basis of settlement of division.   That is to say Sigmund Lindauer withdrawing from the said firm July 1st, 1891, ceases to render services or draw any salary for services after said last mentioned date, but retains his one-third interest in the profits accruing from the continuing conduct of the business, up to and until January 1st, 1892, said continuing conduct being by the firm of G. Wormser & Co., composed of Gustav Wormser and Isaac Wormser parties thereto; it being fully under-

stood that said new firm of G. Wormser & Co., shall succeed
to the good will of Lindauer, Wormser & Co., and shall
have full authority to collect, pay and adjust all open accounts
of or affecting Lindauer, Wormser & Co., and to do all things
necessary to such collection, payment and adjustment, includ-
ing the signing of the old firm's name. It is further agreed
that Sigmund Lindauer retains his one-third of the profit and
loss account, subject to and with right of proportionate share
in any collections which may be made from said account,
whether the same be made before or after January 1st, 1892."
Omitting other clauses not material, the final paragraph reads
as follows:

"The business will be continued by Gustav Wormser
under the firm name and style of G. Wormser & Co., as afore-
said, for the best interests of all concerned, but it is understood
that the dissolution of Lindauer, Wormser & Co., is absolute
July 1st, 1891." Executed in triplicate, and signed by the
three.

The testimony to establish the indebtedness claimed is to
the effect that on January 1, 1892, the defendant owed to the
partnership the sum of $9,709.58, which sum was afterward
reduced by one-third of amount collected from accounts car-
ried to the profit and loss account to the sum sued for, the wit-
ness Gustav Wormser stating that Mr. Lindauer owed the firm
of G. Wormser Co., on the last day of December, 1891,
$9,709.58. This witness shows, as does also the agreement
that a large portion of this indebtedness accrued prior to July
1, 1891, and the entire indebtedness of $9,709.58 was the
amount on a balance agreed on between the witness and de-
fendant in the final accounting contemplated by the agree-
ment for dissolution, stock being taken and appraisement of
buildings, etc., being made between witness, purporting to
represent himself and Isaac Wormser and defendant as
partners, and that the defendant recognized the balance struck
and agreed to pay the same "some day."

Defendant denied that there was any final accounting or
any striking of a balance, as was testified to by plaintiffs'

witnesses, or that he agreed to pay, and said that the conversation in relation to a final accounting had no such result.    As to whether or not there was sufficient evidence to carry this case to the jury on the question of there being a final accounting and stated balance, which could be sued upon at law, it is not, under the view we take of this case, necessary to decide.

The important question this record presents is whether or not any right of action has been shown in favor of the plaintiffs as partners composing the firm of G. Wormser & Co.    A consideration of the effect of the written agreement, of date June 27, 1891, providing for a dissolution and settlement of the affairs of the copartnership of Lindauer, Wormser & Co., appears to settle this question.

PARTNERSHIP:
contract;
construction.

It is certain that this agreement states in terms that the firm and partnership of Lindauer, Wormser & Co., "shall be and stand dissolved from and after July 1st, 1891, the said Sigmund Lindauer withdrawing from said firm," and that an account of "all stock, merchandise, etc., shall be taken during the last week of December, 1891, books balanced, and profits and loss charged with bad accounts; and net assets thus ascertained to be the basis of settlement and division." Thus far it seems clear that a final accounting had in December, 1891, would be between three individuals, Sigmund Lindauer, Gustav Wormser and Isaac Wormser, composing that firm. If such final accounting were had who would have the right to sue?    We find it stated in 17 Am. and Eng. Ency. of Law, p. 1270, that "after a balance has been struck, if assets of the partnership in excess of his share are in the hands of one partner, the claims of his copartners against him are several and not joint, and joint action can not be maintained upon them," and to this are cited Riarl v. Wilhelm, 3 Gill. (Ind.) 356; Farror v. Pearson, 59 Me. 561; and Masters v. Freeman, 17 Ohio St. 323.

In Riarl v. Wilhelm, supra, it is said that "the ground on which partners after dissolution can sue each other in relation to what had been partnership funds or effects, is, that the

joint interest as partners having ceased, a new contract had been made between the parties, in their individual, as distinct from their partnership, characters.

It might be as stated in some of the cases, that the debtor partner would, to equalize interests, owe one of his partners more than another, and thus if he happened to owe each the same, that would be a circumstance not at all militating against the position that the claims would be several and not joint. Concluding, therefore, that if the final accounting were between the partners composing the firm of Lindauer, Wormser & Co., the action would be several and not joint, let us see whether other provisions of the written agreement can make this action maintainable by the firm of G. Wormser & Co., as it has been brought.

It may be conceded, too, we think, that if instead of Lindauer continuing in partnership after July 1, 1891, with Gustav Wormser and Isaac Wormser as individuals, he became thereafter, until December 31, 1891, the partner of G. Wormser & Co., as a firm, and the entire assets of Lindauer, Wormser & Co., were turned over to the new partnership with the firm of G. Wormser & Co. to stand in the place of Gustav Wormser and Isaac Wormser, individuals, and the business of the old partnership to be continued, a final accounting of the affairs of the old and new concern might be had between Lindauer as one partner and G. Wormser & Co., as the other, if the agreement so meant to provide. Whether G. Wormser & Co., would have to sue as assignees or not, as to the old indebtedness, we need not here discuss. It can not be said he was a member of the firm of G. Wormser & Co., because the agreement expressly declares he is not. If he were, this would merely be the old partnership under a new name, and G. Wormser & Co., as a firm could not sue. If not a member of the firm of G. Wormser & Co., was he in partnership with the new firm, he being one member and it the other?

The agreement says "he retains his one-third interest in the profits of the continued conduct of the business by the

firm of G. Wormser & Co." It is evident from the agreement that Lindauer is no longer to have a voice in the continued conduct of the business, and though having a joint proprietorship in the assets in the hands of the new firm, he exercises no proprietary rights. Joint ownership and participation in profits seems generally to create a partnership between the owners. As conversely stated at page 844 of vol. 17, Am. and Eng. Ency. of Law, "the receipts of a share of its profits as compensation for services as agent, clerk, manager, broker or other person acting in a fiduciary capacity is inconsistent with the idea of a joint proprietorship of the business and profits as such and does not constitute a partnership between the parties." It may be, however, that one may be a joint proprietor of the assets of a business, but not necessarily a joint proprietor of the business itself. This would appear more clearly, if for example the capital stock were an ocean steamer owned by three persons, two of them managing the same, and the profits to be divided between the three, and this even though the law would as to third persons consider the three to be partners. The fact that the assets are a stock of merchandise, which changes in specifics, does not prevent the principle from applying. Thus it is laid down, ibid, page 842, that there is no partnership in cases of joint ownership, where a part of the profits is taken for rent, and to this are cited Quackenbush v. Sawyer, 54 Cal. 439; and Chapman v. Eames, 67 Me. 452.

This agreement specifically states that Lindauer merely retains a third interest in the profits, and excludes him from any control or direction of the business. Why is that not to be construed as an agreement to pay him one-third of the profits for the use by G. Wormser & Co., of his interest in the buildings, corral, etc., and the employment of his part of the capital invested in the stock of merchandise? We can not see what other construction can be placed on this agreement. If this be true, then it follows with irresistible logic that the final accounting made in December, 1891, if any were made, must have been between Sigmund Lindauer, Gustav Wormser and

Isaac Wormser, three individuals, and not between S. Lindauer and G. Wormser & Co.

This being so, it follows conclusively, that G. Wormser & Co., had no right of action against defendant in error on the testimony submitted.

For these reasons the judgment of the court below should be affirmed, and it will be accordingly so ordered.

Smith, C. J., Laughlin, J., concurring.