ADOLPHUS J. CHAPMAN *vs.* JOHN A. EAMES, and

EMMA J. STOCKMAN *vs.* SAME.

Penobscot. Decided December 30, 1877.

Eames delivered J. S. his horse with this bill of sale: "In consideration of . . . dollars paid me by J. S. I have sold him one-half of my horse. Said J. S. to keep and handle the horse; I to pay one-half the expenses and to receive one-half the profits. My part of keeping to be $2.50 per week."

*Held,* 1. That this bill of sale made them part owners, but not partners.

2. That in addition to the stipulated price for keeping, Eames was liable *pro rata* for the expense of "handling."

3. That neither party had the right to sell the animal, mortgage him or incur expense for his support upon the credit of both, as he might if there had been a partnership.

4. The stipulated sum for keeping was payable absolutely, profits or no profits, and recoverable in assumpsit.

ON REPORT of two actions tried together.

ASSUMPSIT for board and expenses of the stallion, Eames Knox. The first action covers the time from April 30, 1873, to August 6, 1875; and the second from August 6 to November 25, 1875. There were long lists of items of debts and credits, the justice of some of which was disputed, and of others, not; and the cases were sent to F. H. Appleton as auditor. The defendant contended before the auditor that the actions were not maintainable because there was a partnership in the horse; that the plaintiffs, being assignees of his copartner, could not maintain these actions at law; and relied upon the bill of sale which appears in the opinion. The auditor ruled that the bill of sale did not constitute

a partnership, and stated the debts and credits and struck the balances in favor of the plaintiffs; in the first case for $319; in the second for $41.50.

The cases were reported to the full court for their determination of questions of law, and of final judgment accordingly.

*W. S. Clark*, for the defendant.

*D. F. Davis*, for the plaintiffs, with *A. J. Chapman, pro se.*

DICKERSON, J. The objection made by the defendant in both of these cases to the finding of the auditor, as matter of law, that John Stockman, the plaintiffs' assignor, did not become a partner but a part owner with him of the horse, under the defendant's bill of sale of one-half of the horse to said Stockman, calls for the construction of that bill of sale, which was as follows, to wit:

"Bangor, April 30, 1873. In the consideration of four hundred dollars, paid to me by John Stockman, I have this day sold to the said John Stockman one-half of my stallion, known as the Eames Knox, ten years old, being the same I raised from a colt, color black; said Stockman is to take the horse and keep him and handle him, and I, the said Eames, am to pay one-half of the expenses and keeping of said horse, and am to receive one-half of the profits which said horse may earn; the said Eames' part of said horse's keeping shall be two dollars and fifty cents per week. (Signed) J. A. Eames."

As Stockman accepted this instrument as evidence of his title to one-half of the horse, and acted under it, he is bound by it as effectually as if he had signed it. This instrument is to be construed according to its subject matter, the particular purpose of the parties to be affected by it, the acts to be performed under it, and the general intention of the parties. These are to be primarily determined by the language of the instrument itself. The subject of the transaction was a single article of personal property, not then fit or intended for sale, but to be "kept and handled" by the vendee, so as to be rendered suitable for the use it was intended it should eventually be put to; the defendant was to pay one-half of the expenses and keeping of the horse, the price of the latter being fixed at $2.50 per week, and the profits.

were to be divided equally between the parties. It is obvious that the defendant confided in Stockman's skill "to handle the horse," and that both intended that he should be paid for "the expense" of such training. The control of the horse for the time being was committed to Stockman for that purpose. It would be contrary to the express terms of the agreement included in the bill of sale, as well as subversive of the objects and purposes of the parties, to hold that the defendant might at any time deprive Stockman of the custody of the horse by selling him, or that Stockman might sell him, or mortgage him, or incur heavy expenses for the animal's support and discipline upon the credit of both parties, as might be done if they were partners. The provision for the division of the profits, after payment of the expenses, does not make the parties partners any more than the part owners of vessels become partners for the same cause. The instrument is to be construed as a whole, and the single provision in regard to profits cannot control its obvious purpose and effect, and change the rights, powers and liabilities of the parties under it. We think the finding of the auditor was right.

The legal effect of the bill of sale was to make the parties to the sale part owners of the horse, to vest the custody of the horse in Stockman for the purpose named, to provide for his compensation, and, also, to establish a rule for the division of the profits, if any, after payment of the expenses. Each party had a distinct and independent interest in the horse, and neither could dispose of the whole of him, or act for the other in respect thereto, but only for his own share, except as provided in the contract of sale. The law imposes no disability upon part owners of personal property to make such a contract with each other.

This doctrine is expressly laid down and applied in *Converse* v. *Ferre*, 11 Mass. 325, 326, where the court—while recognizing the doctrine of the common law that in general no action lies by one tenant in common who has expended more than his share in repairing the common property against the deficient tenants—held that it was competent for tenants in common to make special contracts among themselves with respect to the common property,

and that such contracts may be enforced at common law like contracts between parties who do not sustain the relation of tenants in common. In that case it was decided that the tenant in common, who had made repairs upon the common property beyond his proportion on account of the neglect of the other tenant to do his part according to the agreement between them, could recover such deficiency of the defaulting tenant. We place our decision in this case upon the ground stated by the court in that case that "the mutual promises between the parties were lawful and obligatory." *Hitchings* v. *Ellis*, 12 Gray, 449. ·

The decisions of the court in this state are in harmony with this doctrine. *Marshall* v. *Winslow*, 11 Maine, 58. *Dyer* v. *Wilbur*, 48 Maine, 287. *Buck* v. *Spofford*, 31 Maine, 34.

There was no occasion for a bill in equity to adjust the accounts and strike the balance between the parties; it does not appear that the horse ever earned a dollar, and the contract furnished the rule for the adjustment of the accounts between the parties; the stipulation of the defendant to pay the plaintiff's assignor for the board of the horse was an independent one and the sum affixed was payable absolutely, profits or no profits. The defendant's account against the plaintiff was moreover a legitimate subject of set-off, and he availed himself of his right to a set-off before the auditor.                    *Judgment for the plaintiff in each*
*of these cases for the amount*
*found by the auditor.*

APPLETON, C. J., DANFORTH, VIRGIN, PETERS and LIBBEY, JJ., concurred.