SHRUM, ADMINISTRATRIX, ETC., v. SIMPSON.

[No. 19,361.   Filed June 22, 1900.]

CONTRACTS.—*Partnership.*— *Farm Contracts.*— *Landlord and Tenant.*—An agreement by which the owner of lands contracts with another that such lands shall be occupied and cultivated by the latter, each party furnishing a certain proportion of the seed, implements, and stock, and that the products shall be divided at the end of a given term, or sold and the proceeds divided, does not create a partnership between the parties. *pp. 160-164.*

ACCOUNTS.—*Executors and Administrators.—Complaint.*—A complaint disclosing that defendant had in his possession money and property belonging to the estate of decedent to which plaintiff, as administratrix, was entitled, a demand, and the refusal of defendant to account, is sufficient to entitle plaintiff to an accounting. *pp. 164, 165.*

From the Washington Circuit Court.   *Reversed.*

*J. C. Lawler* and *J. L. Shrum,* for appellant.
*H. Morris* and *M. B. Hottel,* for appellee.

DOWLING, J.—Appellant's decedent owned and was in the possession of a farm of 160 acres, in Washington county, Indiana.   He entered into a farming contract with the appellee for the term of one year from March 1, 1898.   The agreement was by parol.   By its provisions, the appellee was to have the possession of the tract for one year from and after March 1, 1898; he was to cultivate the same, the decedent designating what crops should be planted, and in what fields they should be raised; appellee was to have the house, the barn, and the garden plot, and was to pay $2.50 per month as rent for them; he was to furnish all work, labor, and farming implements, excepting one-half of a mowing machine; also, one-half of all seeds for all crops, excepting timothy seed for meadow, all of which was to be furnished by decedent in case he required the same to be sowed in wheat ground; decedent was to furnish the other half of all seeds.   Each crop grown on said lands was to be divided into two equal parts after it was harvested or

gathered, and one of these parts was to belong to the decedent, and the other to the appellee. Each party was to pay for threshing one-half of the wheat, oats, and timothy seed, and, excepting such parts of said grain and seed as the parties mutually agreed to store for later disposition in the markets, or otherwise, the said grains and seed were to be equally divided at the machine. Neither party was to haul away from said lands any of the hay, corn, straw, fodder, or unthreshed oats, but the same were to be fed to the stock on the said farm. One-half of all live stock was to be furnished by each party, and appellee was to care for and feed the same. Neither party was to create any indebtedness for which the other could be made liable. The decedent was to direct when any of the stock should be sold, and, upon a sale of stock, appellee was to pay to decedent one-half of the amount received therefor. All stock, fowls, hay, grain, and oats, were to be divided share and share alike before March 1, 1899, and, if a division could not be agreed upon in any case, the stock not divided was to be sold, and the proceeds divided before March 1, 1899.

It is alleged in the complaint that the appellee took possession of the land under this agreement, that each party furnished the seed, grain, live stock, and other articles required by its terms, and that appellant's decedent died March 11, 1898. It is further alleged that the appellant and appellee acted upon the agreement after the death of said decedent. It is charged that appellee raised upon said lands, during said term, crops of wheat, oats, hay, corn, and stock, of the value of $600, a bill of the particulars of which is filed with the complaint; that the appellee sold and disposed of all the stock, grain, fowls, corn, hay, oats, and timothy seed; that appellant has demanded from the appellee one-half of the amounts so received by him, due to said estate, but, that with the exception of one-half of the wheat grown on said lands, the appellee wrongfully retains the same in his possession.

OL. 155—11

The second paragraph of the complaint does not differ materially from the first, except that it alleges a demand for an accounting, and a refusal on the part of the appellee to account, and, also, that the money and property belonging to the estate of said decedent, in the hands of the appellee, are required to pay to the widow her statutory allowance of $500. A demurrer to each paragraph of the complaint was sustained by the court, and judgment was rendered for appellee. These rulings are assigned for error.

The objections taken to each paragraph of the complaint are that it appears from the agreement sued upon that the appellee and the decedent were partners, or, at least, tenants in common of the property on the farm, and that, in either case, one of the parties having died, the appellee, as survivor, is entitled to the possession of the property so held until he has fully settled the business, and that, until such settlement is made, the appellant has no right to sue. 17 Am. & Eng. Ency. of Law, 835; *Powell* v. *Bennett,* 131 Ind. 465; *McIntosh* v. *Zaring,* 150 Ind. 301; *Valentine* v. *Wysor,* 123 Ind. 47, 7 L. R. A. 788; *Thompson* v. *Lowe,* 111 Ind. 272; *Needham* v. *Wright,* 140 Ind. 190; *Holmes* v. *McCray,* 51 Ind. 358, 19 Am. Rep. 735, and *Kenyon* v. *Williams,* 19 Ind. 44, are referred to as sustaining these objections. Most of these cases decide nothing more than that, where a partnership is shown to exist, one partner cannot maintain an action against another for his share of the partnership assets until the business of the firm has been wound up, the debts paid, and nothing remains to be done but to divide the residue of the partnership property. *Kenyon* v. *Williams, supra,* holds that a partnership may exist in the business of buying and selling real estate. The main question here is, not as to the rights of partners in partnership property, but whether the agreement between the decedent and the appellee created a partnership.

While many definitions of the term *partnership* are given by jurists and courts, and various tests have been pro-

Shrum, Adm., *v.* Simpson.

posed by which its existence may be determined, no general rule on the subject has been, or can be, laid down which will apply to all cases. An author of great and exact learning states the law thus: "In short, the true rule, *ex aequo et bono,* would seem to be that the agreement and intention of the parties themselves should govern in all cases. If they intended a partnership in the capital stock, or in the profits, or in both, then, that the same rule should apply in favor of third persons, even if the agreement were unknown to them. And, on the other hand, if no such partnership were intended between the parties, then, that there should be none as to third persons, unless where the parties had held themselves out as partners to the public, or their conduct operated as a fraud and deceit upon third persons." Story on Partnership, §49. Such intention must, of course, be legally ascertained, and mere declarations of the persons interested and uniting in the prosecution of a common enterprise that no partnership existed, would not be permitted to control the legal effect of acts or proceedings from which the existence of a partnership is by the law presumed.

It is also to be observed that where the rights of third parties are not involved the contract will be liberally construed with reference to the actual understanding of the parties, and the objects they had in view. *Hitchings* v. *Ellis,* 12 Gray 449.

There are obvious reasons for holding that farm contracts, or agricultural agreements, by which the owner of lands contracts with another that such lands shall be occupied and cultivated by the latter, each party furnishing a certain proportion of the seed, implements, and stock, and that the products shall be divided at the end of a given term, or sold and the proceeds divided, shall not be construed as creating a partnership between the parties. Such agreements are common in this country, are usually very informal in their character, often resting in parol as in the present case. In

the absence of stipulations or evidence clearly manifesting a contrary purpose, it will not be presumed that the parties to such an agreement intend to assume the important and intricate responsibilities of partners, or to incur the inconveniences and dangers frequently incident to that relation. The parties to such agreements seldom contemplate anything more than a tenancy of the land, with provision for compensation to the landlord from the fidelity, labor, and skill of the tenant. There is no community of interest in the land, which is the principal thing in the agreement, and a division and several ownership of the crops and other products are usually provided for. While the custom of renting farm lands upon shares is general, the courts have seldom held that such agreements create partnerships between the owner of the land and the tenant. A large majority of the cases construe them as creating tenancies only. *Chase* v. *Barrett,* 4 Paige (N. Y.) 148; *Quackenbush* v. *Sawyer,* 54 Cal. 439; *Chapman* v. *Eames,* 67 Me. 452; *Warner* v. *Abbey,* 112 Mass. 355; *Dixon* v. *Niccolls,* 39 Ill. 372; *Allwood* v. *Ruckman,* 21 Ill. 200; *Putnam* v. *Wise,* 1 Hill (N. Y.) 234, 37 Am. Dec. 309.

The agreement in question relates exclusively to the dealings of the parties with each other, and not with third persons. It distinctly separates their rights in the use and occupation of the land, and in the ownership of its products. Such products and live stock were to be divided *in specie,* except that where a division of the live stock could not be agreed upon it was to be sold, and the amount received therefor divided. No debts were to be contracted by either party for which the other would be liable. Under this agreement, the authority of the appellee to make sales of the live stock was that of an agent, and not that of a partner. Upon a fair construction of the agreement, it is evident that the appellee was the tenant and agent of the decedent, and in no sense a partner.

The complaint disclosed that the appellee had in his

possession moneys and property belonging to the estate of the decedent to which the appellant, as administratrix, was entitled. The possession by the appellee of such money and property of his landlord, being that of an agent, his failure and refusal to render an account of his dealings, and to make a settlement with the administratrix of the decedent was a fraud upon the rights of the appellant. The situation of the parties and the circumstances set forth in the complaint render a discovery indispensable to establish the appellant's right, the appellee being liable for the amount realized from the sale of the property, if such amount exceeded its market value, or for its market value if it was disposed of by the appellee for a less sum. Upon the face of the complaint no pretext appears for the failure of the appellee to render an account, turn over the property of the decedent to the appellant, and pay into her hands the moneys held by him belonging to the estate. The term of the tenancy has expired, all the crops and live stock have been sold, or are in a condition to be divided, there are no debts to be paid, and nothing remains to be done but to make the settlement.

The judgment is reversed, with instructions to overrule the demurrers to the complaint, and for further proceedings in accordance with this opinion.