## BAKER *v.* KEEVER.

1. If two persons entered into a contract by which one agreed to furnish
land, farming implements, and stock for the purpose of carrying on an
agricultural enterprise, and the other agreed to employ laborers and
superintend the work necessary in producing the crop, the product to
be equally divided between them; and if the contract provided that cot-
ton so produced was not to be divided in kind, but was to be prepared
for market and sold, and the proceeds of the sale divided; and if there
was an agreement that the cotton should be sold at such time as might
be fixed by mutual consent of the parties, such agreement will be con-
strued presumptively to refer to mutual consent arrived at sometime
during the year. If the parties did not agree and sell at any time
during the year, this would not give to the landowner the right to hold
the stipulation as to selling by agreement operative for all time, and
to arbitrarily refuse to sell; but he would be bound to sell, after de-
mand made, in a reasonable time and manner. If he refused to recog-
nize such right and to sell, this would constitute a breach of the con-
tract, and damages would be measured in contemplation of the market
price of the cotton on the day of the breach.

17

2. The evidence was sufficient to support the verdict; and there is no error in any of the grounds of the motion for new trial, sufficient to require a reversal of the judgment.

Argued June 20, 1907.—Decided February 28, 1908.

Action for breach of contract. Before Judge Fite. Bartow superior court. November 6, 1906.

Among other things, it was alleged that the plaintiff and the defendant, on or about the 15th day of December, 1902, entered into a parol contract by the terms of which the plaintiff obligated himself to cultivate certain lands belonging to the defendant, about 200 acres in cotton and about 60 acres in corn, the plaintiff binding himself to do all the work or cause the same to be done by laborers selected and paid by him and to be under his oversight and management; that the defendant should furnish all the stock necessary for the planting and cultivation of the crops, and feed the stock during the year, and also furnish all necessary and proper agricultural implements and tools for use in making the crops, and should advance to the plaintiff sufficient sums of money to pay defendant's accounts with his laborers employed in making the crop; that, "when gathered," the crop should be equally divided between the plaintiff and the defendant, the corn to be divided in kind, "the cotton and cottonseed to be prepared for market when matured, and sold for cash, the proceeds to be divided between them equally;" that in pursuance of the contract the plaintiff, on or about January 14, 1903, entered upon the lands of defendant, planted about 200 acres in cotton and about 60 acres in corn, and afterwards skillfully worked and cultivated the same; that petitioner gathered from the corn crop about 1500 bushels, which was divided between the plaintiff and the defendant equally, and the plaintiff gathered the entire cotton crop, which amounted to 76,500 pounds of seed-cotton; that the plaintiff insisted that the same be ginned as it was picked, according to the agreement, but the defendant refused to assent thereto, and insisted upon storing the seed-cotton in the cotton houses on the defendant's land, with the promise to the plaintiff that when a sufficient quantity of cotton had been gathered to run the gin for several days, the gin being the property of the defendant and located on his land, he would commence ginning and gin from time to time as the cotton was picked; that, relying upon these assurances, the petitioner contin-

ued picking the cotton; that defendant refused and neglected to gin any part of the crop during the harvest period, and all of the cotton was finally stored in the cotton houses designated by the defendant for the purpose. The plaintiff continued to insist that the cotton be ginned, but the defendant refused to gin any part of it during the year 1903. Soon after the first of January, 1904, the plaintiff, having no longer any right under his contract to use and occupy the houses belonging to the defendant, and being compelled to remove to other lands which he expected to cultivate during the year 1904, approached the defendant, explained his situation, and demanded that the crop of cotton aforesaid should be ginned at once by the defendant and a division of the crop be made between them, the plaintiff offering to pay to the defendant out of the proceeds of said cotton all the moneys advanced to him by the defendant for the purpose of paying off the labor account and any other proper charge of indebtedness which the defendant might have against him. The defendant refused to gin the cotton at that time, and the plaintiff was forced to quit the premises without having received his share of the cotton crop made by him upon the land of the defendant. After the plaintiff had removed from the premises, the defendant, without notice to plaintiff, ginned the entire cotton crop, amounting to 49 bales of an average weight of 500 pounds lint-cotton each, and, without any notice to plaintiff, hauled said 49 bales from his plantation to his office lot in the city of Cartersville, piling the same out upon the ground in the open, without any covering or protection, exposing it to damage and injury on account of weather. As soon as the plaintiff was informed of these facts he demanded that the cotton be put upon the market for sale; and the defendant refused to comply with the demand, insisting that cotton was advancing and that he intended to hold it for a better price. On or about February 10, 1904, the petitioner was offered 15.85 cents per pound for the cotton, and, being anxious to sell at that price, approached defendant and informed him of the offer and insisted that he consent to the sale of the entire lot, 49 bales, for the purpose of final settlement between them; but defendant positively refused to consent to a sale of the cotton at this price. He also refused to allow petitioner to take his half of the cotton and put it on the market at this price, and has ever since refused to allow petitioner to sell his

part of said crop, and has taken exclusive possession of the entire crop, denying the right of petitioner to possession or dominion over any part thereof, and refusing to pay petitioner the value of his interest in said crop at the time he converted the same in the manner already set forth. The plaintiff's half interest in the cotton crop was worth $2,000 at the time said defendant so converted it, which sum the defendant refuses to pay. The defendant also took into his exclusive possession all of the cottonseed, amounting to about 20 tons, and sold them for the price of $20.15 per ton, realizing $403, one half of which belongs to the plaintiff; and the defendant neglects and refuses to pay the plaintiff therefor. He seeks to recover of the defendant $2,201.50, this being the aggregate sum due on account of the plaintiff's share in the cotton and cottonseed so converted, and 7 per cent. interest thereon, less $975, the amount of money advanced by the defendant to enable the plaintiff to carry on the farming operations. In the defendant's answer the allegations contained in the petition were in a large measure admitted. The points over which the answer raised issue were as follows: (*a*) That the plaintiff agreed to plant and cultivate in cotton 265 acres and in corn 85 acres. (*b*) He contracted to plant and cultivate all the crops on defendant's place in a good, careful, and farmerlike manner. (*c*) The cotton and cottonseed were not to be divided in kind, but were to be sold together without division, "at such time as might be mutually agreed upon by the plaintiff and the defendant." (*d*) The plaintiff bound himself to diligently prepare and plant said land, and to diligently cultivate and harvest the crops, and to furnish suitable labor to prepare, plant, cultivate, and harvest such crops. He did not employ the necessary labor with which to properly cultivate and harvest the crops. Instead of cultivating the crops by himself or by labor employed by him, he procured his son-in-law to cultivate about 133 acres in cotton and about 20 acres in corn, and the son-in-law failed to work the crop in a proper manner. The remaining 130 acres of cotton, which were cultivated by the plaintiff and his hired men alone, were likewise negligently and inadequately and improperly planted and cultivated and harvested, and did not produce a fair crop. The 65 acres planted in corn by the plaintiff and his hired labor were also inadequately cultivated and harvested. (*c*) Only 60,000 pounds of seed-cotton were produced. (*f*) The cotton was

hauled by the defendant to the defendant's office by plaintiff's consent, and this was done in order to save both plaintiff and defendant warehouse charges, and to keep the cotton more safely from the dangers of fire and flood.  (*g*)  Defendant denies that he is indebted to plaintiff in any sum whatever, and alleges that the plaintiff owes him more than $975.  For further plea the defendant alleged, that the plaintiff was indebted to him in the sum of $1,053.47, besides interest, and set forth the various items constituting said indebtedness, consisting of advances of money made by the defendant at several times at the plaintiff's request, consisting principally of advances made to produce the crop and to prepare it for market, but also including a liquidated physician's bill for professional services rendered to the plaintiff during the year, and an item of $50 paid upon a note due by the plaintiff to one Crouch.  The defendant also alleged that the plaintiff was indebted to him in the full sum of $2,120 (besides interest), as damages for a failure to cultivate in a proper manner the number of acres of land which the defendant contended the plaintiff had undertaken to cultivate; it being alleged, that, because of such failure to plant, and because of the plaintiff's negligence in the manner of cultivation, the product actually produced by the defendant was less than should have been produced.  The plea alleged with particularity the contentions of the defendant with respect to these matters.  There was no demurrer to the plea.  Upon the trial evidence was submitted upon all of the contentions of each party.  The jury found for the plaintiff $1,212.83.  A motion for new trial was made; and error is assigned upon the judgment overruling the same.

*John W. & Paul F. Akin* and *G. H. Aubrey,* for plaintiff in error.  *Thomas W. Milner & Sons* and *Neel & Peeples,* contra.

ATKINSON, J.  There are many grounds of the motion for new trial, all of which have been carefully considered.  We do not think that any of them are sufficient to require the grant of a new trial; nor do we regard it profitable to enter into a discussion of any proposition involved in the motion, except that which relates to the time at which the defendant committed a breach of the contract with regard to the sale and distribution of the proceeds of the cotton.  Under the evidence there was a gradual rise in the market price of cotton from the first day of November, when it was ten cents per pound, up to the time that the plaintiff claims that the

breach occurred, on or about the 10th of February, when it was 15.85 cents per pound. At the first of January, it was 12.50 cents per pound. The measure of damages against the defendant would be the market value of the cotton at the time of the breach of the contract, and it was material to know whether the breach occurred when the market price was one price or the other. There was no controversy over the fact that the cotton was not to be sold until after it was ginned and prepared for market. The plaintiff had picked the entire crop of cotton during the year and stored it in the cotton houses of the defendant, to be ginned by the defendant; and the defendant undertook to have it ginned. On the 10th of February the plaintiff obtained a bid for the entire lot of cotton at a price of 15.85 cents per pound, informed the defendant of the fact, and demanded that sale be made at that price. The defendant refused; whereupon the plaintiff then demanded a division in kind, in order that he might sell at that price, which demand was refused. The court instructed the jury: "If Keever's [plaintiff's] contention is correct, that he was offered a certain price for the cotton and that he could have sold it for that price, and the defendant, Baker, refused to sell, and has kept the cotton from that day to this, that was a breach of the contract, although it is contended by the defendant, Baker, that both of them were to agree before they could sell at all; but I charge you that if you believe that the plaintiff was offered that for the cotton, and that was a reasonable price for it, and you believe he could have sold it for that amount, that would amount to a breach of contract, not-withstanding it may have been that there was an agreement between them that he should not sell until they both should agree, provided you find, as I said, it was a reasonable price and was within a reasonable time. In other words, a contract of that kind, that neither should sell until the other should consent, would not mean that one could arbitrarily hold it for all time. He could hold it a reasonable length of time, but he could not hold it beyond that." With respect to this charge, the defendant complained, in his motion for new trial, "that respondent alleged and plead that he and movant agreed that the cotton should be gathered as soon as it was matured, prepared for market, and sold; that he also claimed that he and movant were to have a full settlement before respondent moved from defendant's place, that is, in the latter part

of the year 1903 and before the first of the year 1904; and movant admitted that neither in the pleadings nor evidence does he claim that there was any other agreement; that the movant alleges that he and respondent agreed that the cotton was to be sold at some mutual time agreed upon; that movant testified that he and respondent agreed to have a final settlement in the year 1903; that cotton was worth less in December than in January and February; that respondent testified that he was offered 15.7/8 on or about the 10th of February, 1904; that there was no evidence that he was offered any other certain price on any other date;" and alleges that the charge was erroneous: "(a) In that the court excluded from the jury respondent's contention, that is, that movant breached the contract in December; (b) that the court tells the jury that the contract was breached the day that respondent was offered a certain price, that is, on or about February 10, 1904. Movant says that the breach of the contract and the date of the breach is a question of fact for the jury, and not for the court. (c) That the court stated in the above-quoted charge that movant contended that the cotton was to be sold when mutually agreed upon, and that under such an agreement that movant could have held the cotton a reasonable length of time without breaching the contract. But the court erred by charging that the contract was breached the day that respondent was offered a certain price, on or about February 10, 1904; thus telling the jury that movant had waited a reasonable length of time, and thus excluding from the jury the question of what was a reasonable length of time, which question, movant says, is one of fact for the jury and not for the court." The defendant's theory throughout the case, as indicated by his testimony, was that there was no demand by the plaintiff for a sale until the day on which the plaintiff was offered 15.85 cents per pound for the cotton, on or about the 10th day of February, if then; that up to that time he had held the cotton by consent of the plaintiff in anticipation of obtaining a higher price. He undertook to justify his refusal to sell at the time of the demand just referred to, upon the ground that it was originally stipulated between the parties that the cotton should be sold only at such time as the parties might mutually agree upon. By the instructions to the jury the court adopted the theory of the defendant, that no demand had been previously made. Upon this point the defendant could not complain. Proceeding that far

upon the theory of the defendant, the court then instructed the jury that an agreement not to sell, without mutual consent, would not authorize either party to withhold consent arbitrarily, but that either would be bound to consent to the sale within a reasonable time, at a reasonable price. The whole criticism of the charge goes to the point that the court invaded the province of the jury in fixing the date upon which the breach occurred. It does not extend to any other ground of complaint. In view of the defendant's contention that no previous demand for a sale had been made, we can not see in the charge any suggestion of invasion of the province of the jury. As a matter of law the court was right in holding that neither party, under the agreement made at the inception of the contract relations not to sell the cotton to be produced until both parties should agree to a sale, could arbitrarily withhold his consent to a sale after the expiration of a reasonable time after the product was ready for market.

*Judgment affirmed. All the Justices concur, except Holden, J., who did not preside.*