[No. 15383.   Department Two.   October 10, 1919.]

THE STATE OF WASHINGTON, *on the Relation of Frank A. Ratliffe et al., Plaintiff*, v. THE SUPERIOR COURT FOR WHITMAN COUNTY, *R. L. McCroskey, Judge, Defendant*.[1]

JOINT ADVENTURES—PARTNERSHIP (1, 2)—COMMUNITY OF INTEREST —SHARING PROFITS AS RENT. ·A partnership or joint adventure is not constituted by an agreement called a farm lease, with the usual provisions as to subletting, reentry, control and farming, which gave the lessor one-third of the crop for rent and one-third for use of equipment and its upkeep to be furnished by the lessor, the lessee to pay the cost of operation, and the balance of the crops, with increase of the stock, to be divided equally, where it contained no agreement that the lessor should share in the losses; but the same will be construed to be a lease creating the simple relation of landlord and tenant only.

LANDLORD AND TENANT (17)—TRANSFER OF REVERSION—RIGHTS AND LIABILITIES OF GRANTEES AND TENANTS — CONSTRUCTION OF LEASE. Under a farm lease of two farms, whereby, for a share of the crops and increase in the stock, the tenants were to operate the farms with equipment furnished by the landlord, upon a sale of the upper farm subject to the lease, the vendee thereof and the tenants could cancel the lease as to such farm and surrender possession to such vendee; and subsequent purchasers of the other farm and all the equipment, subject to the lease, had no right to oust the other vendee in virtue of any right they might have to compel the tenants to perform the contract by using the equipment on the farm first sold; their remedy, if any, being against the tenants for breach of contract.

Certiorari to review a judgment of the superior court for Whitman county, McCroskey, J., entered April 1, 1919, upon findings in favor of the plaintiffs, in an action to recover possession of real property. Affirmed.

*Burcham & Blair* and *Glenn E. Cunningham,* for relators.

*Samuel P. Weaver,* for defendant.

[1]Reported in 184 Pac. 348.

BRIDGES, J.—This is an action for the possession of real estate. We will refer to the parties as plaintiffs and defendants. The facts are substantially as follows:

On November 29, 1916, one George Strachan was the owner of two farms located in Whitman county, Washington; one has been and will be referred to as the upper, and the other as the lower farm. Strachan was also the owner of various farm machinery, tools, implements and appliances, and also several head of work horses. On the date above mentioned, Strachan, as the party of the first part, and J. E. Neece and W. E. Neece, as the parties of the second part, entered into a written instrument, which was termed a farm lease, whereby both farms were leased by the first party to the second parties for three years. This instrument also turned over to the tenants all the above-mentioned farming equipment, horses, harness, etc. It was provided that the lessees should do all work in a first-class manner and should sow grain to such parts of the land as should be fit for grain, and all hay land was to be sown to hay. The lease then continues:

"First party is to receive and be entitled to the following proportions of the products raised on the above described lands, to-wit: Wheat, one-third; oats, one-third; hay, one-third. All grain which belongs to the first party is to be delivered by the second party at the nearest warehouse in sacks to be furnished by the first party. All hay and grain belonging to the first party is to be well housed and sacked so as to shed rain, until delivered at warehouse.

"Second party agrees to give first party at least ten days written notice of the time and place of threshing all grain grown on said lands, and not to assign this lease or sublet said premises without the written consent of the said party of the first part, and at the expiration of this lease to surrender up peaceable pos-

session of said premises in good condition to the party of the first part.

"The title to all of the products shall be and remain in the first party until such time as he shall have received his full proportion thereof, and second party shall not mortgage or dispose of any part thereof to the prejudice of the party of the first part.

"The first party has the right to go upon the said premises at any time and perform such work thereon as he may deem advisable which does not prevent the party of the second part from carrying out the terms and conditions of this lease. Second party is to keep all buildings and fences in good repair. All damages caused by second party not complying with the terms of this lease shall be at a loss of second party.

"It is further agreed that no lien shall be claimed or filed by any party performing any labor or work of any kind whatever on said premises or on or about said products, and that no lien or right of lien shall exist therefor.

"Party of the first part agrees to furnish 24 head of work horses and harness for same, and all implements of every kind necessary to farm the said land and harvest the crops thereon, and to pay for all new extra parts needed to keep said machinery in good repair.

"Party of the first part agrees to furnish all seeds and feed necessary to till and sow said lands in the fall of 1916, and spring of 1917, one-half of whatever seed and feed is used in 1916 and 1917 to be returned to the first party at the termination of this lease by the party of the second part.

"Party of the first part and parties of the second part further agree that all grain and crops grown of the said lands after the rent of one-third has been paid shall be divided equally between the parties hereto, each party to furnish his own sacks to sack the grain, and the party of the second part is to do all the hauling of the grain and crops, and party of the first part agrees to pay wages for the men while they are hauling his share of the crops mentioned herein.

"It is further agreed by and between the parties hereto that all increase from the stock furnished by the party of the first part shall be divided equally between the parties hereto. Party of the first part agrees to furnish a stallion for work and breeding purposes.

"It is further agreed that all increase from the cattle furnished by the party of the first part shall be equally divided by the parties hereto."

The lease further provides how the increase of the stock shall be divided and that the lessees shall take proper care of all such stock; that, at the time of the making of the lease, there were about 350 acres of summer-fallow; that, at the termination of the lease, an equal number of acres of summer-fallow should be left on the lands; that all straw and pasturage on the place, at termination of the lease, should become the property of the lessor; that it was understood that the lands were being offered for sale and might be sold subject to the lease; and that, if the lessees failed to strictly comply with the terms of the lease, the same might be terminated by the lessor for that reason.

The contract seems to provide that Strachan is to receive one-third of the crops for the use of the lands and is to receive another one-third of the crops for the use of his teams and farming equipment, which is, of course, the same thing as receiving two-thirds of the crops for the use of the lands, horses, farming equipment, etc.

These farms were operated under this lease until July 17, 1917, when the lessor conveyed the upper farm to the plaintiffs, subject, however, to the terms of the lease. After the plaintiffs became the owners of the upper farm, they stepped into the shoes of the original landlord, in so far as that farm was concerned, and the Neece brothers continued to operate both farms under the terms of the lease, employing

the machinery and farming equipment mentioned in
the original lease for that purpose. The one-third of
the crops was delivered to the plaintiffs instead of to
Strachan, the original lessor. On May 11, 1918,
Strachan conveyed the remainder of the land, to wit,
the lower farm, together with all of the above-men-
tioned farming machinery, horses, cattle, etc., to the
defendants' vendor. At about the same time, Strachan
assigned to defendants' vendor all his interest in the
lease. The Neece brothers, the tenants, continued to
operate under the terms of their lease until on or
about the first day of October, 1918, when they and
the plaintiffs entered into an agreement whereby the
original lease, in so far as the upper place was con-
cerned, was canceled and annulled and possession of
that place was turned over to the plaintiffs. They
entered into actual possession about the first of Octo-
ber, 1918, but in a few days plaintiffs were ousted by
defendants, who proceeded to plow, cultivate, seed and
otherwise operate both the upper and lower farms.
On October 12, 1918, Neece brothers informed the de-
fendants that they would not further operate either
of the farms and would surrender the possession of
the lower farm, and all the machinery and farm equip-
ment covered by the original lease, to them. After
some controversy concerning the surrender, and some
effort on the part of the defendants to persuade Neece
brothers to continue the operations, they met and
divided the stock as provided in the lease, and all
machinery, tools, implements and appliances covered
by the original lease and the lower farm were given
into the possession of the defendants. At that time
the defendants requested Neece brothers to assign
to them all of their interest in the Strachan lease,
which request Neece brothers agreed to comply with,
but thereafter failed or refused so to do. Immediately

after the defendants had dispossessed the plaintiffs of the upper farm, the latter gave the usual notice to the former demanding possession. This defendants refused, and this suit followed. The case was tried to the court without a jury. The testimony took a very wide range. The trial court found for the plaintiffs and entered judgment accordingly. The defendants sued out a writ of certiorari for review by this court of the proceedings in the trial court, and the record is now before us.

It must at all times be kept in mind that the only question involved in this action is the possession and right to possession of the upper farm.

It is contended by defendants, as we understand them, that the instrument called a farm lease is of a dual character, being a combined lease and joint adventure; that, so far as it undertakes to lease the land itself, it creates the relationship of landlord and tenant, but in so far as it affects the farm equipment and the use thereof, it creates a joint adventure; that the joint adventure feature of the instrument could not be terminated by agreement between Neece brothers, the tenants, and the plaintiffs; at any rate, it could not be terminated so as to affect any rights which the defendants might have by virtue of the joint adventure relationship; that defendants had the right to have their equipment used on the plaintiffs' land and thus made to earn one-third of the crops; and that, when Neece brothers refused to so use the equipment, the defendants had the right to use the same on plaintiffs' farm, and consequently they had the right to the possession of that land in order to make such use of their equipment. The plaintiffs contend that the contract was a simple lease creating only the relation of landlord and tenant.

We agree with the finding of the trial court to the effect that plaintiffs were in the actual possession of their farm on the first day of October, 1918, and remained in possession until about October 12, 1918, when they were dispossessed by the defendants.

The courts and authorities have not yet laid down any very certain definition of a joint adventure, nor have they established any very fixed or certain boundaries thereof, but generally they have been content to determine whether the given or conceded facts in a particular case constitute the relationship of joint adventurers or copartners. Generally speaking, the authorities seem to hold that a joint adventure very closely resembles a copartnership, and that the rules of law governing the latter are generally applicable to the former. It is conceded that a joint adventure creates a close and even fiduciary relationship between the parties, and that whether an instrument establishes the relationship of landlord and tenant or joint adventurers or copartners is to be ascertained from the contract. 15 R. C. L., page 500 *et seq.*; 23 Cyc. 453 *et seq.; Shrum v. Simpson,* 155 Ind. 160, 57 N. E. 708, 49 L. R. A. 792, Ann. Cas. 1916E 440, and notes; *Brotherton v. Gilchrist,* 144 Mich. 274, 107 N. W. 890, 115 Am. St. 397, and note.

A careful study of the written instrument involved in this case convinces us that it is nothing more nor less than a simple lease creating only the relationship of landlord and tenant, and that it lacks many of the essentials of a copartnership or joint adventure. Almost everything in the instrument shows that it was the intention of the parties to execute a lease, and that only. By the instrument, Strachan leased to Neece brothers two certain farms owned by him, for the use of which lands he was to receive one-third of the crops.

Strachan also leased or hired to Neece brothers a complete farming equipment, such as horses, harness, plows, harrows, etc., for the use of which he was to be paid an additional one-third of the crops to be raised. The tenants were to do all of the work and be at all of the expense of operating the farm. They had no authority to hire farm help and charge any portion of the expense to the lessor, nor did the lessor have any authority to create any indebtedness concerning the operation of the farm. Strachan was to be at the expense for the upkeep and repair of all the farming equipment. He was to furnish certain seed, but it was to be returned to him in kind. The tenants were expressly prohibited from assigning the lease or subletting it, and were to surrender the premises in good condition at the termination of the lease. They were expressly prohibited from encumbering the crops or disposing of the same. The lessor reserved the right to go upon the land and use it in any way which was not inconsistent with the uses to which the tenants desired to put the same under their lease. The tenants were expressly forbidden to permit any liens for work or otherwise, and, finally, it was agreed that the lessor might terminate the lease should the tenants fail to faithfully live up to its terms. There was nothing in the agreement whereby the losses, if any, were to be shared. These provisions of the lease are, in our judgment, wholly inconsistent with the idea of a copartnership or joint adventure. These questions are very intelligently discussed in the case of *Miles Co. v. Gordon*, 8 Wash. 442, 36 Pac. 265, where the court, speaking through Chief Justice Dunbar, said:

"It seems to us that this agreement cannot be construed to be a formation of a partnership in any sense. It purports to be a lease. It is recited in the instrument itself that it is a lease, and while, of course such

recitation would not make it a lease if the elements of partnership were in the agreement, yet it seems to us that these elements are entirely wanting. Leases which provide for a division of the profits are of common occurrence in the business world. . . .

"It is true that there is an agreement here to share the profits, but on the other hand there is no agreement to share the losses, which is the ordinary test of a partnership. We know of no reason why a person who has a house, or a farm, or any other character of property which he is desirous of leasing, shall not be allowed to make his own terms as to what the payment shall consist of, whether, in the case of a farm, it shall be for one-half of the gross amount of grain raised, or for one-half of the amount of grain raised after the expense of putting in and harvesting the crop are deducted, or for a certain number of bushels of grain without regard to the amount raised, or for a certain specified sum of money. In each instance the amount agreed upon is intended as a payment for the use of the premises; and in the case at bar it seems that nothing more is imported into this contract than is generally found in contracts of lease."

In the case of *Parker v. Fergus,* 43 Ill. 437, the court, in construing a contract similar to the one involved here, said:

"Over this entire country, we see that farmers lease their lands for agricultural purposes, and agree to receive a third or other portion of the products of the soil, and the labor of the tenant, as a payment of the rent. Again, it not unfrequently occurs, that the owner of the soil furnishes the land, the teams, implements and the seed; while another performs the labor, and they divide the product, according to the terms of their agreement, and no one ever imagined, that in either class of such cases, the parties became in any sense copartners."

In the case of *Shrum v. Simpson,* 155 Ind. 160, 57 N. E. 708, Ann. Cas. 1916E 440, 49 L. R. A. 792, the court, in construing a similar contract, said:

"There are obvious reasons for holding that farm contracts, or agricultural agreements, by which the owner of lands contracts with another that such lands shall be occupied and cultivated by the latter, each party furnishing a certain proportion of the seed, implements, and stock, and that the products shall be divided at the end of a given term, or sold and the proceeds divided, shall not be construed as creating a partnership between the parties. Such agreements are common in this country, are usually very informal in their character, often resting in parol as in the present case. In the absence of stipulations or evidence clearly manifesting a contrary purpose, it will not be presumed that the parties to such an agreement intend to assume the important and intricate responsibilities of partners, or to incur the inconveniences and dangers frequently incident to that relation."

To the same effect, see the following cases: *Cedarberg v. Guernsey*, 12 S. D. 77, 80 N. W. 159; *Musser v. Brink*, 68 Mo. 242; *Dixon v. Niccolls*, 39 Ill. 372, 89 Am. Dec. 312; *Alwood v. Ruckman*, 21 Ill. 200; *Bowers v. Graves & Vinton Co.*, 8 S. D. 385, 66 N. W. 931; *Day v. Stevens*, 88 N. C. 83, 43 Am. Rep. 732; *Reeves v. Hannan*, 65 N. J. L. 249, 48 Atl. 1018; *Quackenbush v. Sawyer*, 54 Cal. 439; *Warner v. Abbey*, 112 Mass. 355; *Chapman v. Eames*, 67 Me. 452.

The cases relied upon by the defendants to show that this contract created, at least in part, a joint adventure are, in our judgment, very different in their facts from the case at bar.

The case of *Wetmore v. Crouch*, 150 Mo. 671, 51 S. W. 738, cited by defendants, was an instance where the plaintiff advanced to the defendant $250 to be invested for their joint interest in options on certain real estate. If the venture was a failure the defendant was to return one-half of the money advanced, otherwise the profits were to be divided between the parties. Under these facts it would appear to be unquestioned that

a partnership or joint enterprise relationship was created.

The case of *Baker v. Keever*, 130 Ga. 257, 60 S. E. 551, cited by defendants, did not determine whether the contract there being inquired into created a partnership, joint adventure or other character of relation.

In the case of *Bedolla v. Williams*, 15 Cal. App. 738, 115 Pac. 747, cited by defendants, the court expressly found it unnecessary to determine whether the agreement constituted a partnership or a joint adventure.

In the case of *Zech v. Bell*, 94 Wash. 344, 162 Pac. 363, the facts were that it was agreed between the parties that the appellant should obtain a contract to do certain work and he would pay certain of the bills, and the respondent should do the work, and that the profits should be divided. The court held that the agreement created a joint adventure.

In the case of *Bane v. Dow*, 80 Wash. 631, 142 Pac. 23, the respondents, who were brokers living in New York City, controlled certain importing business. They entered into a contract with appellants by the terms of which they directed this business to be turned over to appellants, and, after certain deductions, there was to be an equal division of the returns. The court held that the agreement constituted a joint adventure.

The facts in each of these cases are vastly different from the facts in the case at bar; in truth, the distinctions, to our mind, are so plain and palpable that they serve well to show the difference between an ordinary lease contract and a joint adventure.

It should be kept in mind that only Neece brothers were the tenants, and that they only had the right of possession. They did not assign to defendants their lease, nor right to possession by virtue thereof. Defendants were never the lessees nor assignees of the lease, and therefore could never have been entitled to

possession against the objections of the plaintiffs. Nor, for that matter, could they have become the lawful assignees of the lease, because that instrument expressly provided against any assignment. The right to have Neece brothers use their equipment on plaintiffs' lands did not give defendants themselves any right to possession of those lands. They were in the same position Strachan was after he had sold the upper place to plaintiffs, retaining all the rest of the leased property; and certainly Strachan would not have been in position to legally hold possession of the land he had sold. When the plaintiffs purchased the upper farm they became the landlords as to that farm, and there is no reason why they might not make an agreement with the tenant for the annulment of the lease. It may be that, under the terms of the lease, Neece brothers were bound to use defendants' farming equipment in operating the plaintiffs' lands during the term of the original lease. If so, then it would seem that the Neece brothers have violated their agreement with the defendants and would be liable to the defendants in damages. In any event, we hold that the plaintiffs were in the actual possession of their land and that they were ousted by the defendants, and that they are entitled to possession as against the defendants; and therefore the judgment under review must be affirmed.

It is so ordered.

HOLCOMB, C. J., FULLERTON, PARKER, and MOUNT, JJ., concur.