**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Clarence L. FARRINGTON, etc., et al.**

**No. 11939.**

United States Court of Appeals Seventh Circuit.

May 15, 1957.

William B. Weisell, Indianapolis, Ind. (Locke, Reynolds, Boyd & Weisell, Indianapolis, Ind., on the brief), for defendants-appellants.

Samuel D. Slade, Seymour Farber, Attys., Dept. of Justice, Washington, D. C., Jack C. Brown, U. S. Atty., Indianapolis, Ind. (George Cochran Doub, Asst. Atty. Gen., of counsel), for appellee.

Before MAJOR, FINNEGAN and SCHNACKENBERG, Circuit Judges.

MAJOR, Circuit Judge.

Plaintiff instituted separate actions against defendants named in the caption, for the recovery of damages sustained by the alleged conversion of a one-half interest in certain described livestock consigned to the several defendants by Melvin K. Root, upon which plaintiff by and through the Farmers Home Administration had previously acquired two chattel mortgages executed by Melvin K. Root and Hazel M. Root [1] as security for a loan made by plaintiff to Root. Separate but identical answers were filed by defendants, the cases were consolidated for trial and the court made findings of fact and entered its conclusions of law adverse to defendants. From a consolidated judgment against the defendants the appeal comes to this court.

Defendants, located in Indianapolis, Indiana, were, as their names indicate, engaged in the commission business, that is, in the sale of livestock consigned to them for that purpose. The stock alleged to have been converted consisted of cattle and hogs consigned to them on different dates, of which Root allegedly owned a one-half interest subject to chattel mortgages in favor of plaintiff. As we view the situation, the only serious question for decision arises from the affirmative defense pleaded by each of the defendants, that is, that Melvin K. Root and one Zona White were partners, that the stock in controversy was partnership property with legal title in the partnership rather than in the individuals and that such being the case there was no conversion by the defendants.

There is little, if any, dispute as to the evidentiary facts. The case was tried upon a stipulation, documentary exhibits and the oral testimony of the land owner, Mrs. White. In November 1951, the Roots became tenants on the farm of Mrs. White and at that time or shortly thereafter purchased from a previous tenant the latter's one-half interest in the livestock then on the farm. On November 26, 1951, Mrs. White and the Roots entered into an agreement characterized by the parties as a lease. So far as material, the agreement provided that the Roots were to furnish the tools and machinery necessary to cultivate the land

---

1. Hazel M. Root as the wife of Melvin K. Root is frequently mentioned in the proceedings but has no legal interest in the litigation.

properly, and that each of the parties should own equally all livestock on the farm and bear equally the expense of commercial feed, seed, fertilizer, veterinary fees and cost of combining grain. It was agreed that six milk cows should be kept, with each party owning a one-half interest therein and each receiving one-half of the income from the sale of milk. Mrs. White agreed to furnish lime used on the farm and retained "the privilege to inspect the farm at her convenience." The agreement provided, "This lease is to be from March 1, 1952 to March 1, 1953," with conditions under which the same might be terminated. The agreement was signed by the parties as "Lessor" and "Lessee."

On November 26, 1951, the same date as the execution of the agreement between Mrs. White and the Roots, the latter executed a crop and chattel mortgage in favor of the Farmers Home Administration on their one-half interest in certain of the farm property, including the livestock alleged to have been converted by the defendants in the instant actions. A similar chattel mortgage was executed between the same parties on March 11, 1952. These mortgages were given by the Roots as security for a loan extended to them by the mortgagee. Both mortgages were appropriately recorded, the former on November 27, 1951, and the latter on March 13, 1952. Each of the mortgages covered a one-half interest in certain described personal property, including the livestock involved in these actions, of which Root represented in said mortgages that he was the owner.

On different dates after the execution and recordation of said mortgages Root, in connection with Mrs. White, delivered certain of the mortgaged livestock to defendants for sale in the regular course of their business. Upon each sale defendants delivered separate checks to Mrs. White and Root, each for one-half of the proceeds realized therefrom.

The court, under a heading "Conclusions of Law," stated that the relationship between the parties was that of "landlady and tenant" and "The Court specifically finds that the elements and incidence of partnership did not at any time exist between the said Zona White and Melvin K. Root and Hazel M. Root." Whether the issue of partnership be treated as one of fact or law is not too material because in either event we agree with the result reached by the district court.

The Indiana law is controlling, and our attention is called to numerous court decisions of that State which have treated and considered the issue. A reading of these cases makes it plain, as might be expected, that the determination of the issue depends upon the facts of the particular case. Of the cases relied upon by defendants, we think it sufficient to refer to Watson v. Watson, 231 Ind. 385, 108 N.E.2d 893, because not only is it the latest case decided by that court but it is the one most strongly relied upon by defendants. In that case the court defined the elements essential to the creation of a partnership as follows (231 Ind. at page 387, 108 N.E.2d at page 895):

"'(1) a voluntary contract of association for the purpose of sharing the profits and losses, as such, which may arise from the use of capital, labor or skill in a common enterprise; and (2) an intention on the part of the principals to form a partnership for that purpose.

\*      \*      \*      \*      \*      \*

"'It is the substance, and not the name of the arrangement between them, which determines their legal relation toward each other, and if, from a consideration of all the facts and circumstances, it appears that the parties intended, between themselves, that there should be a community of interest of both the property and profits of a common business or venture, the law treats it as their intention to become partners, in the absence of other controlling facts.' Bacon v. Christian, 1916, 184 Ind. 517, 521, 522, 111 N.E. 628, 630 \*  \*  \*."

We think the facts of the instant case readily distinguish it from those of Watson. There, the parties held to be partners were all relatives, living in the same house, each with a voice in the management and control of the farm and each contributing either labor or capital to the venture in which they were jointly engaged. Here, Mrs. White had no voice in the management and control of the farm; in fact, by the agreement she was limited to "the privilege to inspect the farm at her convenience." In the Watson case there was no suggestion as to a landlord and tenant relation while here it is admitted that White and Root sustained that relation in the general operation of the farm. It is sought here to isolate a segment of the general operation, that is, the portion which pertained to the raising of livestock, and characterize it as a partnership business. This contention, if sound, means that a dual relationship existed between White and Root, that is, both as a landlord and tenant and as a partnership. Thus, when Root picked corn from the field in which it was grown his relation with White was that of a tenant, while in feeding corn to the livestock it was that of a partner. It may be that this kind of a dual relation is possible but, if so, we think it could be established only by clear and convincing proof.

In the Watson case the court relied strongly upon the conclusion of the trial court that a partnership relation existed, while in the instant case a trial court in the same State has concluded that the relation of the parties was that of landlord and tenant and not partners.

The circumstances relied upon to prove partnership are in the main equally consistent with the landlord and tenant relation. This is particularly true as to the sharing of expenses. For instance, White was obligated to share one-half of the expense for fertilizer and seed, which was not an expense incurred in connection with the livestock business. The parties maintained no joint account or common fund from which any of their expenses were paid. They paid their expenses as individuals and not as partners or as those engaged in a common enterprise. This is illustrated by the testimony of Mrs. White that the elevator, on her instructions, charged to her individually one-half of the expense incurred in processing grain to be fed to the livestock. It is also significant that the money received from the sales of the livestock in controversy was divided by the defendants and remitted to the parties as individuals, not as partners. No partnership books were maintained and no partnership tax return was filed. Mrs. White accounted for the money received from the farm in her individual tax return and presumably Root did likewise.

We suspect this partnership theory was evolved to meet the exigencies of a lawsuit. Certainly there is nothing to indicate that either White or Root contemplated a relation other than that of landlord and tenant. The manner in which they approached and treated the situation dispels any basis for a claim of partnership. The chattel mortgages themselves state that Root "is the absolute and exclusive owner of said property," that is, a one-half interest in the livestock covered by the mortgages. Moreover, defendants make no claim that they were deceived or misled as to the relation which existed between White and Root. In addition to the chattel mortgages of which they had constructive notice, defendants evidently were instructed to divide the proceeds from the sales of stock and to remit one-half each to White and Root. This in itself was an indication that White and Root were operating as individuals and not as partners.

In Shrum v. Simpson, 155 Ind. 160, at page 163, 57 N.E. 708, at page 709, 49 L.R.A. 792, the court in considering a question similar to the one now before us made the following pertinent observation:

"There are obvious reasons for holding that farm contracts or agricultural agreements, by which the owner of lands contracts with another that such lands shall be occupied

and cultivated by the latter, each party furnishing a certain proportion of the seed, implements, and stock, and that the products shall be divided at the end of a given term, or sold and the proceeds divided, shall not be construed as creating a partnership between the parties. * * * The parties to such agreements seldom contemplate anything more than a tenancy of the land, with provision for compensation to the landlord from the fidelity, labor, and skill of the tenant. There is no community of interest in the land, which is the principal thing in the agreement, and a division and several ownership of the crops and other products are usually provided for. While the custom of renting farm lands upon shares is general, the courts have seldom held that such agreements create partnerships between the owner of the land and the tenant."

In our view, there is no legal basis for reversing the judgment. It is

Affirmed.